CASE 47.—ACTION BY TENNIE EVANS AGAINST THE NEW YORK LIFE INSURANCE COMPANY.—January 26, 1910.

## New York Life Insurance Company v. Evans

Appeal from Hickman Circuit Court.

R. J. BUGG, Circuit Judge.

Judgment for plaintiff, defendant appeals.—Reversed.

1. Insurance—Lapse of Policy—Waiver' by Insurer.—A provision in a life insurance policy and in a premium note that the policy shall lapse by failure of insured to pay the note, being wholly for the insurer's benefit, is one which' it may waive, and such waiver may be express or implied.

2. Insurance—Lapse of Policy—Waiver of Provision by Insurer —The acceptance by an insurer of a premium note is a waiver of the policy provision for cash payment of the particular premium in advance, but such waiver is only for the time for which the note is to run, and, if the note provides for forfeiture of the policy if not paid at maturity, it is treated substantially as the same provision in the policy is.

3. Insurance—Lapse—Waiver.—If an insurer, after a policy has lapsed, retains the unpaid premium note merely as evidence that it has been canceled and acts consistently with its

claim of forfeiture, it does not waive the forfeiture; but if it retains the note as evidence of indebtedness to it, or asserts it as a debt against insured, the forfeiture is deemed to have been waived.

4. Usury—Penalties and Forfeitures—Loan on Insurance Policy. —An agreement for a loan from an insurance company on a policy, providing that, in default of payment of the interest for a month after due, the company could cancel the policy for the customary cash surrender value after deducting the loan and accrued interest, being a stipulation for forfeiting a substantial benefit under the policy, was in the nature of usurious extortion, and void as against the statutes.

5. Insurance—Forfeiture of Policy—Evidence.—Evidence held to show that an insurance company had not elected to treat a life policy as lapsed for failure to pay a premium note when due, but was holding it in abeyance, deferring final action until it had exhausted the chance of having insured continue it, when the note was paid.

J. H. McINTOSH, WM. MARSHALL BULLITT, KEITH L. BULLITT and BULLITT & BULLITT for appellant.

ROBBINS & THOMAS, JOE W. BENNETT, R. L. EVANS and R. G. ROBBINS for appellee.

OPINION OF THE COURT BY JUDGE O'REAR—Reversing.

Appellant issued to Dillard M. Evans a life policy on April 20, 1888, for $2,000, which was payable to appellee, the wife of the insured. The annual premium was $54.80. The premiums were all paid, down to the one due April 20, 1904. The latter was not then paid. On May 15, 1902, the insured borrowed from the company $300 on this policy, secured by a pledge of the policy. The loan agreement provided that the loan was in no instance to be extended beyond the duration of the policy. The premium due April 20, 1904, not having been paid, the policy was, by its terms, subject to lapse.

A condition of the policy reads: "If the premiums are not paid as hereinafter provided, on or before the days when due, then this policy shall become void, and all payments previously made shall be forfeited to the company, except that (as provided by the act of May 21, 1879, chap. 347, Laws of the State of New York), if this policy, after being in force three full years, shall lapse or become forfeited for the non-payment of any premium, a paid-up policy will be issued, on demand within six months after such lapse with surrender of this policy, under the same conditions as this policy, except as to payments of premiums, but without participation in profits, for such an amount as the net reserve on this policy at the time of lapse, computed by the American table of Mortality and interest at four and one-half per cent., after deducting all indebtedness to the company, will purchase as a single premium at the present published rates of the company, at the age of the insured at the time of lapse."

On June 11, 1904, the insured applied for reinstatement, furnishing a medical certificate of his health. He then paid in cash $15, one year's interest in advance on the $300 note above named, $14.80, and 20 cents (the latter as interest) to be applied on the premium then due, and executed the following "blue note": "Pol. 280131. April 20, 1904. Without grace, six months after date I promise to pay to the order of the New York Life Insurance Co., forty dollars, at Bank of Commerce, Louisville, Ky., value received, with interest at the rate of 5 per cent. per annum. This note is given in part payment of the premium due April 20, 1904, on the above policy, with the understanding that all claims to further insurance, and all benefits whatever, which full payment in cash of

said premium would have secured, shall become immediately void and be forfeited to the New York Life Insurance Co., if this note is not paid at maturity, except as otherwise provided in the policy itself. $40. Dillard M. Evans, Milburn, Ky. Tennie Evans, Milburn, Ky.''

This note was not paid at maturity. Considerable correspondence ensued, the company urging the insured to "reinstate" his policy. He was advised in the first of the letters dated October 26, 1904, that "the above policy lapsed for the nonpayment of the April, 1904, premium on account of the note of $40.00 due October 20, 1904." The detail of those communications, and of the transaction of June 11, 1904, will be taken up later on in the opinion. On January 17, 1905, the insured sustained a severe injury. On the 19th of January, 1905, he sent the company a draft on a New York bank for $40. He died on January 20, 1905. The bank collected the draft, but referred the matter of reinstatement to its Louisville agency, as the insured did not accompany the draft with a certificate of health. The company had not then learned of the death or of the injury to the insured. It declined to pay the policy. This suit was brought by the beneficiary to recover the face of the policy less the loan of $300. The company denied liability, on account of the nonpayment of the note named, except that it admitted that on October 20, 1904, when the policy lapsed, as it claims, the net value of the reserve of the policy, after deducting indebtedness, would buy, at the company's published single rate for one of the then age of the insured, a policy of paid-up insurance of $185, which was tendered in court, but was declined. Two issues were made by the pleadings: One, that the company had waived its

rights to declare the policy forfeited upon the non-payment of the note given for the premium. The other that there was sufficient surplus due the insured on the policy to have paid off the $40 note. However, the court instructed the jury upon a different issue—one not presented in the case. The verdict was for the plaintiff. Appellant contends that it was entitled to a peremptory instruction, upon the evidences and issues, to find for it. This is the principal point urged for reversal.

Whether appellant was entitled to a non-suit verdict depends on whether there was a total failure of proof on behalf of the plaintiff below on either of the issues presented. It is true that the policy as well as the premium note each provides that the policy shall lapse by the fact of the failure of the insured to pay the note. But it is also true that that provision is one wholly for the company's benefit, and one which it therefore may waive. The waiver may be express, or it may be by such conduct as evinces the purpose of the company not to enforce it. It does not necessarily include the elements of estoppel. It is enough if the company actually elects not to enforce the provisions of forfeiture, or even fails to do so before the policy contract becomes a claim upon the death of the insured. The policy provides for an automatic forfeiture. If the conditions were such that there then remained nothing to be done by the company to consummate the forfeiture, it would operate of its own force. But we will see that such was not the case here.

A number of cases have come before this court involving forfeiture features of insurance policies similar in many respects to this one. In those cases, as here, the insured had executed premium notes, in lieu

of paying the premiums in cash. The standard form of life policies provides for the payment of premiums in cash in advance as condition precedent to the continuation of the contract. Yet in each instance notes, conditioned as the one at bar, had been accepted by the insurers in lieu of the cash payments. It was once thought, and sometimes held, that the notes did not waive the stipulation for cash payment—that the insured carried the risk of dying uninsured until the premium note was paid in cash. That view was early abandoned. It is now universally held that the acceptance by the insurer of the note is a waiver of the policy provision for cash payment of the particular premium in advance. But it is waived only for the time for which the note is to run, and, if the note contains a provision of forfeiture of the policy if not paid at maturity, it is treated substantially as the same provision in the policy is. Consequently that provision of forfeiture may be waived by the insurer, upon the same principle that the policy provision may be waived. So it has been held that if the note is not paid at maturity, and if the insurer intends to and does thereupon treat the policy as void for that nonpayment, the forfeiture will be enforced. St. Louis Mutual Ins. Co. v. Grigsby, 10 Bush, 310; Johnson v. Southern Mutual Life Ins. Co., 79 Ky. 403; Fidelity Mutual Ins. Co. v. Price, 117 Ky. 25, 77 S. W. 384, 25 Ky. Law Rep., 1150; Moreland v. Union Central Life Ins. Co., 104 Ky. 129, 46 S. W. 516, 20 Ky. Law Rep. 432, Union Central Life Ins. Co. v. Duvall, 46 S. W. 518, 20 Ky. Law Rep. 441; Manhattan Life Ins. Co. v. Myers, 109 Ky. 372, 59 S. W. 30, 22 Ky. Law Rep. 875; N. Y. Life Ins. Co. v. Warren Deposit Bank, 75 S. W. 234, 25 Ky. Law Rep. 325; Franklin

Mutual Life Ins. Co. v. McAfee, 90 S. W. 216, 28 Ky. Law Rep. 676.

Where the insurer, after the policy had lapsed, retained the note merely as evidence of the fact that it had been canceled, and acted consistently with its claim of forfeiture, it is held not to be a waiver of the forfeiture. Moreland v. Union Central, supra; Union Central v. Duvall, supra. If, however, the insurer retains the note as evidence of indebtedness to it, or asserts it as a debt against the insured (which is the same thing), the forfeiture is deemed to have been waived. The reason is, the note is consideration for the carrying of the policy for the full term it represents, say one year. If the insurer asserts it as a debt owing it, then it must concede the equivalent, which is its liability upon the policy for the period represented by the premium note. The company will not be heard to say that the insurer owes it for insuring him for one year, yet deny that he is insured. Other conduct of the insurer denoting its election to consider the insurance as still in force may also operate to waive the forfeiture. The courts are alert to seize upon such circumstances and conduct to relieve from forfeiture; forfeitures being abhorrent to the law. They have been tolerated in insurance more than in any other character of transaction, because of the supposed necessity of prompt payment by the insured in order to enable the insurer to keep its obligations to its other policy members. But as it is being better understood now that the insured, after they have paid a few premiums, have established a fund, called the "reserve of the policy," with which to pay the liability of each policy when it matures, insuring themselves with their

own means, as it were, there is less reason for the exception in favor of life insurance contracts, as compared with other contracts, than formerly appeared. By virtue of legislation, and under stress of competition from those jurisdictions where the legislation exists, prohibiting the forfeitures of policies, after a given number of premiums have been paid, but instead, requiring or providing for the issue of paid-up policies, or for extended insurance that the value of the reserve of that policy will buy at single premium rates, the old-fashioned forfeiture clauses are now about obsolete. In truth, in this policy, as we have seen in the clause quoted above, there is not a forfeiture at all, but a conversion of the policy, automatically, from one class to another—from a twenty-year life for $2,000 to a paid-up limited. The provision as to "forfeiture" is a misnomer, so far as that word is generally and properly used in law. Formerly, the insurer was benefited, after a time, in having the policy forfeited. Now it is not. Rather the contrary. Instead of the policy's being "forfeited," it is now usually spoken of as "lapsed," which, while in one sense synonymous with "forfeited," now has a somewhat less harsh meaning; is not so complete; is, instead of annihilation, to fall in the scale of value. or privilege. This much has been said, in order to better apply the facts of the case to the proposed instruction for a nonsuit.

The company retained the $40 note. The note is filed in the record as evidence, marked "canceled." When it was canceled is not clear from the testimony. It is once intimated that it was canceled immediately after its due date, and when it was returned from the Bank of Commerce, unpaid. But this does not ap-

pear very clearly. On the other hand, the corres-
pondence filed shows that the company still enter-
tained the hope that the insured would continue the
policy, and repeatedly urged him to do so. That was
not necessarily inconsistent with the plea that the
policy had abated by reason of the nonpayment of
the note. But the company had agreed in the policy
that if it lapsed for non-payment of the premium it
would then, immediately upon the policy's being re-
turned to it with a demand to that effect, issue a
paid-up policy. In this instance there was not occa-
sion to return the policy to the company. It was al-
ready possessed of it, by reason of the pledge for the
$300 loan note. Nor was the demand necessary to
have enabled the company to cancel the old policy
and issue the paid-up policy in its stead. The com-
pany evidently so understood the contract, for it wrote
the insured in more than one letter, "if you have any
intention whatever of reinstating the above policy,
you shouud do so as soon as possible, as we are noti-
fied by the company that unless the policy was imme-
diately reinstated they would settle it under the terms
of the loan agreement." The loan agreement, which is
the blue note copied above, contains no stipulation
as to any settlement upon nonpayment of premium,
except that which is "provided in the policy itself."
That, as we have seen, is the issuance of a paid-up
limited policy. On November 11, 1904, the vice pres-
ident of appellant company wrote this letter to the
Louisville branch office: "Re-policy No. 280,131.
Evans. Dear Sir: The above policy pledged to the
company as security for a loan, has lapsed by the non-
payment of the premium and interest, and will be set-
tled under the terms of the loan agreement unless re-

instated immediately. Please inform us at once if there is any chance of effecting reinstatement." This answer was noted on the bottom of the letter: "Ren'l. Dept. Hold open as long as possible, as we believe insured will reinstate. Lou. Br. W."

There was a loan agreement executed by the insured and his wife to the company in 1902, to secure the $300 loan alluded to. It provided for the payment of interest in advance at the rate of 5 per cent. per annum, and contained this stipulation: "Interest is payable in advance, but in case said loan is repaid cr said policy canceled under section 4, interest will be charged to the date of repayment or of cancellation, and any excess will be refunded." Section 4, referred to, provides: "That in the event of default in payment of said interest, or of any premiums on said policy, for one month after they shall respectively become due, said party of the first part (the company) which is irrevocably hereby appointed the attorney for that purpose, is hereby authorized at its option to cancel said policy and its accumulations, for the customary cash surrender value then allowed by said party of the first part for the surrender of policies of this class * * * after deducting said loan and accrued interest."

The policy had no surrender cash value indorsed on it, available as of the date of its lapse. The stipulation for forfeiting a substantial benefit under the policy as a penalty for the nonpayment of a note for money loaned was in the nature of a usurious extortion, and void as against the statutes. N. Y. Life Ins. Co. v. Curry & Bro., 115 Ky. 100, 72 S. W. 736, 24 Ky. Law Rep., 1930, 61 L. R. A. 268, 103 Am. St. Rep., 297.

In this loan agreement the incorporation of that additional feature, a burden to the policy, not in the original policy, was null for the same reason. The only involuntary settlement which was legal under the loan agreement was the one in which the paid-up policy was to be issued. As a matter of fact the company did neither, nor did they return to the insured the excess of interest paid on the $300 note; all showing the company had not elected to treat the policy, as lapsed for the purpose of settlement. If it was not lapsed for that purpose, then it was not lapsed at all. There was no neutral ground of nonliability upon the policy by which the company could yet retain its policy holder's money, note, policy, and all intact, giving up nothing, committing itself to nothing, yet holding itself so that it could in case of eventualities take either horn of the dilemma its then interest might prompt. Nor was the policy marked "lapsed." We are convinced that the company's attitude was that of holding the policy in abeyance, deferring final action, until it had exhausted the chance of having the insured continue it. To lapse the policy, the matter should have been closed, the rights of the parties, whatever they were, then ascertained and adjusted. That the company did not do; instead, it held the whole matter open. True, it observed in its letters to the insured that the policy had "lapsed," and urged him to become "reinstated." But those letters, at best, were but attempted recitals of what had been done, and expressions of hope or advice as to what ought to be done by the insured. Writing a letter that a policy had lapsed, when it had not, did not alter its status. The fact was, and remained, that the policy continued precisely as it was before, no

vol. 136—26

indorsement, no entry, no step toward settlement, nothing to fix a changed relation of the policy holder to the company. On the company's showing alone as failed to show that the policy had lapsed.

In addition, four witnesses testified that they had seen and read a letter from the company to the insured, written in January, 1905, in which he was asked to pay the $40 note past due. The letter was lost. The motion for a peremptory instruction was then properly overruled.

What occurred after the insured was injured has little relevancy to the issues to be tried. The then payment of the $40 note would not alone have reinstated him, if the policy had actually been canceled previously. Still the fact was relevant as tending to show how the insured and insurer interpreted the correspondence, and the concurrent transaction.

Reversed and remanded for a new trial under proceedings consistent herewith.