12697

STUBBS v. PHILADELPHIA LIFE INS. CO.

(149 S. E., 2)

Messrs. *Tison & Miller,* and *Edward J. Boughton,* for appellant,

Messrs. *McColl & Stevenson,* for respondent,

July 9, 1929.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

An opinion embodying the judgment of this Court, reversing the judgment of the Circuit Court, and remanding the case for judgment in favor of the defendant under Rule 27, was filed October 27, 1928. Upon a petition for a rehearing filed by the plaintiff the same was granted and the rehearing was had at the June session, 1929.

The Court is satisfied with the former opinion, with the exception of a minor matter hereinafter noted. The former opinion, with the concurring opinion (in the result), is withdrawn, and this substituted therefor.

This is an action upon two policies of insurance upon the life of the intestate Julius Stubbs, in the sum of $2,500 each, payable upon his death to his estate, issued March 16, 1917; he died January 14, 1919.

The complaint states two separate causes of action; one upon each policy, which are identical in all respects. It will be convenient to discuss the cause of action set forth in the transcript, upon Policy No. 36296; the conclusions being decisive as well of the cause of action based upon Policy No. 36106.

The complaint alleges the issue of the policy, the payment in advance of the first premium, $125.05, the death of the insured while the policy was in force, the request for blank proofs of death, the refusal to furnish them; and demands judgment for $2,500 with interest from January 27, 1919,

the date upon which the defendant refused to furnish the blanks.

The answer admits the issuance of the policy, the payment in advance of the first premium, the death of the insured, and the refusal to furnish the blanks. It denies that the policy was in force at the time of the death of the insured; on the contrary, it is alleged that the policy was not in force, for the reason that it had ceased and determined some two months before the death of the insured, for the non-payment of a note which, at the request of the insured, had been given and accepted, upon certain terms and conditions, for the second premium which fell due on March 16, 1918.

The case was tried before his Honor, Judge Wilson, and a jury, at Bennettsville, at November term, 1926. At the conclusion of the testimony, the defendant moved for a directed verdict in its favor upon the following grounds:

"The defendant moves the Court to direct a verdict in favor of the defendant, on the ground that it appears from the uncontradicted evidence that the policies sued on were to become void and all liability of the defendant thereunder was to cease and determine on the failure of the insured to pay the premium extension notes it introduced in evidence, and that the insured failed to pay said notes, and there is neither allegation nor proof that the defendant in any way intended to waive or did waive the forfeiture arising from such failure to pay the premium extension notes, nor any evidence from which any such waiver could be inferred, and there is neither allegation nor proof of any fact estopping the defendant from claiming such forfeiture, or any fact from which such estoppel could be inferred."

The motion was refused, the presiding Judge ruling as follows:

"Well, gentlemen, I have listened to your very interesting arguments in this case. I wavered one way, and then the other. When you closed yesterday afternoon, I was very

much inclined to take your view; when you first started the argument this morning, I was. I have read this case here (referring to *Gunter v. Philadelphia Life Ins. Co.*, 130 S. C., 1, 125 S. E., 285), and have tried to comprehend it, and it looked to me at one time that the case at bar was on all fours with this case here (*Gunter case*); but after hearing both sides, and you gentlemen have argued this case very fully, I think, and after trying to get at the real meaning of this case (*Gunter case*), and how far it governs the case at bar, I have come to the conclusion that there is a difference, and that there is enough in this case for me to leave the question of waiver and estoppel to the jury. And hence, I will have to do that and will have to refuse your motion."

The jury returned a verdict in favor of the plaintiff as for the full amount claimed upon both policies, $7,473.21; from the judgment entered upon which the defendant has appealed upon exceptions which present the questions hereinafter considered.

The undisputed facts of the case are these:

The policy was issued on March 16, 1917, and the first premium, $125.05, was paid at that time, being an advance payment as required. Before the second premium fell due on March 16, 1918, the insured wrote to the state agents of the company at Monroe, N. C., stating that it was inconvenient for him to pay the premium in cash, and asking that the company accept as small a cash payment as they would, and allow him to give a note for the remainder due in November, 1918. His request was forwarded to the home office in Philadelphia. They replied, allowing him to make a cash payment of $38.05 and give his note for the remainder (with $3 interest), $90, payable November 16, 1918. The insured accordingly remitted the cash and forwarded the note. A premium receipt was forwarded to him showing that the second premium had been so arranged. The premium note contained the following stipulation:

"This note is given and accepted in part payment of the annual premium due on above date, on my Policy No. 36296.

"It is understood and agreed to by me that if this note is not paid at its maturity, or at the expiration of any period to which it shall have been renewed, the said insurance contract No. 36296 shall lapse, and all further liability of said Philadelphia Life Ins. Co. on account of said contract shall immediately cease and determine, subject to the privileges and provisions therein stated, and that the money which has been paid on account of premium or premiums for the balance of which this note is given shall be forfeited to the Company."

The policy also contained a similar provision:

"Except as herein provided the payment of a premium or installment thereof shall not maintain the policy in force beyond the date when the next premium or installment thereof is payable, and failure to pay any premium or note when due will forfeit the policy and all payments made thereon. Any unpaid portion of the current year's premium and all indebtedness will be deducted from any settlement of this policy."

On October 15, and again on November 8, the company mailed, and the insured in course received, notices that the premium notes would be due on November 16. These notices stated that, unless the notes were paid when due, the policies and all payments made on them would become forfeited and void, that any prior extension must not be construed as the company's custom or in any way binding the company to make any further extension, and that the company did not agree to send any further notices. They advised the insured that payment could be made under the conditions of the notice, to Gordon Insurance & Investment Company Agency, managers for the Southeastern division, at Monroe, N. C.

On November 12, 1918, four days before the premium note fell due on the 16th, the insured wrote to the Gordon Company, state agents, recognizing the fact that both notes

would be due on that day, and asking for an extension to January 1, 1919, and to be advised concerning the request.

The defendant offered in evidence a letter from the Gordon Company to the home office, dated November 16th, submitting the request of the insured, and also a letter in reply, dated November 19th, declining the request. Both of these letters, upon objection by counsel for the plaintiff, were excluded.

At the same time that the Gordon Company transmitted the request of the insured to the home office, November 16th, the Gordon Company advised the insured of the submission.

On November 21st, the Gordon Company wrote the insured advising him as follows:

"We are advised by the Philadelphia Life that they cannot grant the extension asked for until January 1st, for the payment of your two notes of $90.00 each, as they have already carried it for eight months on the cash payment made. The policy may be reinstated by the payment of the notes and interest and furnishing the Company with the enclosed Personal Health Certificate, satisfactory to their Medical Department, provided you avail yourself of this offer by January 1st, after which time a Medical Health Certificate will be required. We feel sure that you do not want your insurance to stand lapsed and we trust that you will sign the enclosed certificate and return to us with remittance for $180.00."

It is contended by the plaintiff that this letter was never received, though as a matter of course the administratrix of one who died in the middle of January would hardly be in a situation to give very accurate testimony of what had become of the intestate's correspondence two months before.

At any rate, the note was not paid when it was due, nor at any time before or after even the 1st of January, 1919, which was the limit of the request for extension.

On or about January 8th, the company wrote from its home office to the insured two letters, calling attention to the

lapse of the policies for the non-payment of the notes on November 16, 1918, and again offering to reinstate the policies on payment of the notes and interest and the furnishing of a satisfactory health certificate. These two letters were found unopened among the insured's papers after his death, together with the policies and the premium note notices.

The main contention of the defendant is that its motion for a directed verdict should have been sustained upon the grounds above stated. The plaintiff's contention is that there was sufficient evidence of a waiver of the condition in the policy and in the premium note that non-payment of the premium note due November 16, 1918, would avoid the policy and of estoppel against the assertion of lapse under the condition, to require a submission of those issues of fact. The Circuit Judge so held, and practically limited the liability of the company to those issues.

The plaintiff relies upon waiver and estoppel, or rather evidence thereof, upon the two grounds:

(1) That the company retained the premium note after it had declared a lapse of the policy under the condition of non-payment in the policy and in the note.

(2) That some affirmative action was required of the Company to terminate its liability under the policy, by reason of the non-payment of the premium note.

I. *As to the retention of the note:* It will be observed that his Honor, the Circuit Judge, made two distinct rulings as to the effect of a retention of the note by the company after its maturity. He held, in the first instance, that the mere retention of the note may not constitute a waiver, for instance, where it is held for the purpose of evidence, but that, where nothing more than the retention appeared, it became a question of fact for the jury whether the retention evinced a purpose to waive the forfeiture and to collect the full amount of the note.

He held, in the second instance, that if the company retained the note after maturity, *and it appeared,* in addition

to that fact, *from the evidence,* that it was the purpose of the company to keep and use the note as a valid obligation against the insured, the retention, with such intention, constituted a waiver of the forfeiture by reason of the non-payment of the premium note.

These hypotheses are entirely inconsistent. The first permits the jury, *without further evidence* than the retention of the note, to draw the inference that the company intended to declare a lapse of the policy by reason of the non-payment of the note at maturity, and at the same time to enforce full payment of the note, from which inference the jury would be justified in finding a waiver of the non-payment condition in the note. The second permits the jury, upon finding *from the evidence* "that it was the purpose of the defendant Company to keep and use these promissory notes as a valid obligation against the insured," to construe such conduct, in connection with the retention of the note after maturity, as a waiver of the non-payment condition in the note.

We think that the first hypothesis is entirely erroneous; the second entirely right, *provided there be, in the case, any evidence at all tending to sustain the element that the company intended to hold and use the note as a valid obligation against the insured, for the full amount of the note.*

Both the policy and the note provide that the non-payment of the premium note at maturity shall avoid the policy. The note is not disputed; the non-payment of it at maturity is conceded. Under these circumstances, clearly the burden is upon the beneficiary of the policy to sustain her replication to the company's contention of lapse of the policy by establishing a waiver by the company. This replication cannot be established by an inference drawn from the simple fact of retention of the note after maturity, for the retention is compatible, as his Honor, the Circuit Judge, held, with a purpose to use the note as evidence of non-payment, a breach of the condition of the policy and the note, resulting in a lapse of the policy. The note may be retained for another

purpose. The premium was due on March 16, 1918; the company waived the payment in advance, and accepted the note of the insured, payable eight months thereafter. During that period of eight months, the insured received the full benefit of the insurance, and, if he had died prior to the maturity of the note the beneficiary would have been entitled to the full amount of the insurance, no principle of justice and right would permit the insured to receive that benefit without compensating the company for it. The company therefore was entitled at least to the pro rata of the note for the time during which the insurance was effective. So that, in any event, it was erroneous to hold that the jury might draw an inference that the company intended to enforce the note, while declaring the policy lapsed, from the simple act of retaining the note in its possession after maturity and declaration of lapse.

We think that it is well established by the authorities, as indicated in the second hypothesis above stated, that the company cannot hold the note as a binding obligation against the insured for the full amount of it, after non-payment at maturity, and at the same time declare the policy lapsed by reason of such non-payment. The reason therefor is clearly expressed in the case of *New York Life Ins. Co. v. Evans,* 136 Ky., 391, 124 S. W., 376, 378. After declaring, "Where the insurer, after the policy had lapsed, retained the note merely as evidence of the fact that it had been canceled, and acted consistently with its claim of forfeiture, it is held not to be a waiver of the forfeiture," the Court proceeds:

"If, however, the insurer retains the note as evidence of indebtedness to it, or asserts it as a debt against the insured (which is the same thing), the forfeiture is deemed to have been waived. The reason is, the note is consideration for the carrying of the policy for the full term it represents, say one year. If the insurer asserts it as a debt owing it, then it must concede the equivalent, which is its liability upon the policy for the period represented by the premium note. The com-

pany will not be heard to say that the insured owes it for insuring him for one year, yet deny that he is insured."

It seems to us that there can be no doubt of the correctness and justice of this proposition, but it cannot be applicable except when the facts are presented which support it. In the case at bar there is not only an absolute failure of the plaintiff to present the fact that the company "held and used" the note as an obligation against the insured which they were attempting to enforce, or even considered it as such; but the only evidence upon the. point is that the company did not consider it as an obligation of the insured or listed it among its assets. The uncontradicted evidence is that "the Philadelphia Life Insurance Company has never attempted to collect either of the above premium notes, and they were not carried as an asset of the company after November 16, 1918."

We consider the case of *Gunter v: Philadelphia Life Ins. Co.,* 130 S. C., 1, 125 S. E., 285, absolutely conclusive of the issues involved in the case at bar. The facts ·of that case are strikingly parallel. An annual premium was due to mature on March 26, 1921. On the 21st the insured wrote the company that he could not meet the payment and asked for an extension of thirty days. Apparently before he had time to hear from the company he wrote again on the 24th that he could not pay a loan note which fell due on the same day as the premium; and asked an extension on it of thirty or sixty days. The company complied with both requests, by extending the payment of the premium to May 26th and the loan note twelve months, by accepting a note payable May 26th, covering the premium due March 26th, interest on the premium and interest on the loan note, less a dividend declared. Prior to May 26th, the insured wrote again that he could not meet the premium note due on that day and asked for a further extension of sixty days. The company granted his request upon the payment of $3, which he paid, and executed a premium note payable June 26th. Both policy and note contained a provision for the lapse of the policy for

non-payment of the premium note due June 26th. It was not paid, and the company declared the policy lapsed. Upon the death of the insured in January following, the beneficiary brought suit upon the policy. The contention of the plaintiff was thus expressed in the brief of her counsel:

"The plaintiff's theory is that the note of March 26, 1921, was actually accepted as in payment of the premium and not as a mere evidence of indebtedness, the stipulation of the policy and note to the contrary notwithstanding—and this they proposed to demonstrate by the terms of the receipt."

We are relieved from considering this aspect of the case at bar, by the following concession in the brief of the counsel for the plaintiff: "Here we are not contending that a personal liability note accompanied by part cash operated as a payment."

In the *Gunter case,* the Circuit Judge held that there was no evidence tending to show a waiver by the company of the provisions in the policy and note in reference to a lapse of the policy for non-payment of the note, but refused the defendant's motion for a directed verdict upon the ground alone that the issue of whether the note was taken in payment of the premium, or simply as a mere evidence of indebtedness, should be submitted to the jury. Upon the appeal by the defendant from a judgment in favor of the plaintiff, the plaintiff gave notice of a motion to sustain the Circuit Judge's order refusing the defendant's motion for a directed verdict, upon the additional ground that there was sufficient evidence tending to show that the company had waived this claimed forfeiture, to require a submission of that issue to the jury. The plaintiff urged two grounds—one of which is not pertinent to the present inquiry; the other was that the company had retained in its possession the unpaid premium note. The Court distinctly held by an unanimous decision that the retention of the note was no evidence of waiver, saying:

"The failure of the company to return the premium note. The law does not require an entirely vain or useless thing.

If the company was right in declaring, as early as August 11, 1921, fifteen days after default, that the policy had lapsed for failure to pay the extended premium note on July 26th, and the note provided that the insured had incurred no personal liability upon it (although it would have been nothing but fair and just that he be required to pay for insurance, the benefit of which he enjoyed between March 26th and July 26th), what possible use could this note have been to the insured, or what benefit accrued to the company in retaining it, except as evidence of its contention that the note had not been paid, and that the forfeiture had been incurred—evidence which it surely had the right to preserve? The company could not have sued upon the note. They have made no effort to collect it. The only right which they had under the terms of the note was to declare the policy lapsed for its non-payment. This they have exercised and present the retained evidence of their claim"—citing *State Life Ins. Co. v. Tyler*, 147 Ga., 287, 93 S. E., 415; *New York Life Ins. Co. v. Evans,* 136 Ky., 391, 124 S. W., 376, and *Keller v. Ins. Co.,* 301 Ill., 198, 133 N. E., 726, hereinafter referred to, to which may be added the following:

"Retention of premium note after maturity and mailing of notice to insured that policy has lapsed, and to revive it insured must pay note, is not unconditional demand for payment, nor does it constitute a waiver." *Morgan v. Home Ins. Co.,* 216 Ky., 589, 288 S. W., 321.

"Mere retention of premium note after forfeiture held not waiver thereof, although attempt by insurance company to collect premium note would be election to treat policy as in force, and hence a waiver of forfeiture for non-payment of premium." *Provident Life & Accident Ins. Co. v. Hollums,* 213 Ala., 300, 104 So., 522.

When a note for renewal premium was not given in absolute payment, but merely to extend time, the fact that the insurer retained the note without affirmatively indicating an intention to enforce payment does not show waiver or estop-

pel that will prevent an insistence on forfeiture. *Novak v. La Fayette Life Ins. Co.,* 106 Neb., 417, 184 N. W., 64.

"Where an insurance company made no attempt to collect a premium note after its maturity, which provided that, in case the note was not paid, all claims to further insurance, which full payment in cash of the premium would have secured, should be forfeited to the company, except as otherwise provided in the policy, the fact that the company did not offer to return the note at its maturity to the maker did not estop it from relying on the forfeiture provided therein." *New York Life Ins. Co. v. Warren Deposit Bank* (Ky.), 75 S. W., 234.

M. took out a policy of insurance on his own life, giving a note for a portion of the premium, in addition to the regular premium note; the policy providing that, if such cash note was not paid at maturity, the policy would be forfeited. M. assigned the policy to the plaintiff. Held that the forfeiture became complete upon failure to pay the note when due, and such forfeiture was not waived by defendant's failure to return the note to plaintiff after non-payment. *How v. Mut. Life Ins. Co.,* 80 N. Y., 32.

It is true that there is a slight distinction between the note in the *Gunter case* and that in the case at bar. The note in the *Gunter case* contained an express statement that the insured incurred no personal liability upon it in the event that it was not paid at maturity and the company exercised its right to declare the policy lapsed; while in the present case there is no such statement in the note.

It is contended that because of the absence of this statement the note in the present case was independently enforceable against the insured, and that therefore the retention of it was a fact from which waiver or estoppel might be inferred, nothwithstanding the language of the *Gunter case.* It is true that in the Gunter opinion the point was stressed that the company's failure to return the note was harmless; that the law did not require an entirely vain or useless thing;

and that the note was of no possible use to the insured or benefit to the company except as evidence of its contention that it had not been paid. This was so obvious an answer to the plaintiff's contention in the *Gunter case* that it was a sufficient explanation of the Court's decision. But, examined closely, it could not have been the sole reason for the Court's decision. It is clear that the Court did not decide or intend to decide that the rule it announced was limited to cases in which the notes contained a statement of the maker's non-liability. The Court reasoned to its conclusion other than through the mere truism, and did not limit its decision to it. In so reasoning, this Court was persuaded by the reasoning of other Courts and adopted their conclusions, three instances of which are cited in the Gunter opinion as the authority and basis of the conclusion there reached. Of the three cases thus cited, a Georgia case, a Kentucky case, and an Illinois case, two of them exhibit notes, like the notes in the case at bar, that did *not* contain the statement excluding personal liability. The note in the Kentucky case cited in the opinion (*New York Life Insurance Co. v. Evans,* 136 Ky., 391, 124 S. W., 376, 377) was as follows:

"Without grace, six months after date I promise to pay to the order of the New York Life Insurance Co., forty dollars, at Bank of Commerce, Louisville, Ky., value received, with interest at the rate of five per cent. per annum. This note is given in part payment of the premium due 4/20/04 on the above policy, with the understanding that all claims to further insurance, and all benefits whatever, which full payment in cash of said premium would have secured, shall become immediately void and be forfeited to the New York Life Insurance Co. if this note is not paid at maturity, except as otherwise provided in the policy itself."

Yet it is of such a note, similar in this respect to the note in the present case, that the Supreme Court of Kentucky used the language quoted with approval in the Gunter decision:

"Where the insurer, after the policy had lapsed, retained the note merely as evidence of the fact that it had been cancled, and acted consistently with its claim of forfeiture, it is held not to be a waiver of the forfeiture. * * * If, however, the insurer retains the note as evidence of indebtedness to it, or asserts it as a debt against the insured (which is the same thing), the forfeiture is deemed to have been waived."

Where, in the case at bar, is there the slightest evidence to leave to a jury that the company retained Stubbs' notes as evidence of his indebtedness to it or that it ever asserted the notes as a debt against Stubbs or his estate? There is, on the other hand, admitted evidence *contra,* uncontradicted and uncontroverted, that "the Philadelphia Life Insurance Company has never attempted to collect either of the above premium notes and they were not carried as an asset of the Company after November 16, 1918."

In the Illinois case (*Keller v. Insurance Co.,* 301 Ill., 198, 133 N. E., 726, 727), the note in question was the following:

"Six months after date I promise to pay to the North American Life Insurance Company of Chicago seven hundred forty dollars at the rate of five per cent. per annum, at 1702 North American Bldg., Chicago, Illinois.

"It is agreed that this note is given in part payment of premium due 12/30/1913 on Policy No. 18098, with the understanding that all claims to further insurance, and all benefits whatever which payment in cash of said premium would have secured, shall become immediately void and forfeited to said company if this note is not paid at maturity."

Of such a note the Illinois Supreme Court used the language quoted with approval in the Gunter opinion:

"The mere retention of premium notes after maturity does not furnish ground for presuming or inferring a waiver of conditions of forfeiture on which the notes were given and accepted; such retention being consistent with the assertion

of forfeiture, since the notes may be held merely as evidence of their non-payment.

"When a note for renewal premium was not given in absolute payment but merely to extend time, the fact that the insurer retained the note without affirmatively indicating an intention to enforce payment does not show waiver or estoppel that will prevent an insistence on forfeiture."

It is apparent, therefore, that this Court's reasoning was broad enough to embrace both the note in the *Gunter case* and the note in this case, and that its decision did not turn upon whether the note did or did not contain a disclaimer of personal liability. What, as a matter of fact, is the difference? The Gunter note expressly stated that the insured could not be sued for it. No more could Stubbs have been sued on the note in this case. Given the facts, which are uncontroverted, that on the maturity date of the note the company lapsed these policies for non-payment of the notes and struck them from its assets and thereafter wrote to the insured declaring the policies lapsed and offering to reinstate them, it is idle to say that the notes could be collected by suit. We are of the opinion that there is no personal liability upon these premium notes, whether they expressly say so or not, certainly not beyond compensation for the actual period of extension, March 16, 1918, to November 16, 1918. The difference between the two notes is that, in the *Gunter case,* the company was concluded by the terms of the note, from enforcing it, and was limited to its right to declare the policy lapsed; while in the present case the company reserved the right of election either to enforce the note and thereby waive the lapse, or to declare the lapse and thereby waive enforcement of the note. It is certain that the company could not do both, declare the lapse and enforce the note. The evidence is indisputable that it elected to declare the lapse, and not the slightest evidence that it retained the note as a binding obligation upon the insured, or took any steps to enforce it. The note was retained, as the company had the right to do, for good and legitimate

reasons entirely consistent with its insistence upon a lapse of the policy.

II. *As to the duty to give notice of the lapse:* We do not find that any such contention was presented by the plaintiff in the Court below; no direct ruling was made by the Circuit Judge as to it; no motion to sustain the refusal to direct a verdict upon this ground. The contention is not, strictly speaking, before the Court, but, if it had been, it could not be sustained.

It is possible that the defendant has presented the question for consideration in its exception to the charge of the Judge, as follows : "If an insurance company has a right to forfeit a contract of insurance upon the happening of certain facts, and it knows that those facts have happened, and yet does not forfeit the policy, that would constitute a waiver of its right to forfeit"—and for that reason we will consider it.

Applied to this case, the charge can only mean that non-payment of the notes at maturity gave rise to a right to forfeit the policies in the sense that the company was then entitled to act to terminate them, but that some affirmative action by the company was necessary to the exercise of that right; that, if such affirmative action were not taken, the right was not exercised; and that, if the company knew that it could exercise the right of forfeiture but did nothing, this was a circumstance from which its waiver of the right might be inferred. The theory, in other words, is that the company must do something to forfeit the policy, failing which, with knowledge of the facts, its rights are gone, if "it knows that those facts have happened, and yet does not forfeit the policy, that would constitute waiver of its right to forfeit."

This is not the rule in South Carolina or elsewhere. The true rule is that, after the ground for a lapse of the policy has been supplied by the insured, in order to relieve himself of its consequences, *he* must show that the company has done or omitted something which in law would constitute a waiver of the right to insist upon the lapse ; not that the company must

do something to make the lapse effective which has already been provided for by the express agreement of the parties.

The point appears to have been passed upon and concluded in the case of *Iowa Life Ins. Co. v. Lewis*, 187 U. S., 335, 23 S. Ct., 126, 47 L. Ed., 204, cited by this Court upon another point, in the *Gunter case*. In that case the Court below, whose judgment was reversed by the Supreme Court, instructed the jury concerning the provisions for a lapse of the policy upon nonpayment of the note as follows:

"It is such a provision that, if taken advantage of, would require affirmative action on the part of the company; that is to say, when the note was not paid at maturity the company should have within a reasonable time thereafter notified the insured that in view of the fact that his note given in part payment of the premium upon the policy had not been paid, the policy, which was issued in consideration of such note, ceased and determined. There is no evidence that any such action was taken on the part of the insurance company."

This instruction was one of the errors for which the case was reversed. There had been conflicting authority upon the point, and Mr. Justice McKenna, delivering the opinion of the Supreme Court of the United States, has elaborately reviewed the decisions. Speaking to this point, the decision reads, *inter alia,* as follows:

"The receipt [policies and notes in this case] provides that, if the note, or any part of it, be not paid at maturity, the policy shall 'cease and determine.' What does this mean? That the policy shall cease and determine at the occurrence of maturity, or at the option and *upon some affirmative action of the company?* The latter is the contention of the defendant in error, and, as we have seen, the ruling of the trial Court; the former is the contention of the plaintiff in error. Upon the issue thus made, the cases are not harmonious. The decisions of this Court, however, support the contention of plaintiff in error. * * *

" 'The provision * * * for the release of the company from liability on a failure of the insured to pay the premiums when due is of the very essence and substance of the contract of life insurance. To hold the company to its promise to pay the insurance, notwithstanding the default of the assured in making punctual payment of the premiums, is to destroy the very substance of the contract'—quoting *Klein v. Insurance Co.,* 104 U. S., 88 (26 L. Ed., 662).

"We shall presently consider how far these principles apply to a claim of waiver of forfeiture in the case at bar. Our present inquiry is, *when and how does forfeiture occur,* and it seems an obvious conclusion from the cited cases that *forfeiture occurs upon nonpayment of the premium ad diem.* But against the conclusion, *Mutual L. Ins. Co. v. French,* 30 Ohio St., 240, 27 Am. Rep., 443, and its approval by this Court in *Thompson v. Knickerbocker L. Ins. Co.* [104 U. S., 252, 26 L. Ed., 765], are cited. * * *

"Did this Court intend to approve the proposition that to cause a forfeiture some affirmative action was necessary by the company—*a declaration to that effect and the surrender of the premium notes?* To hold the latter would be to hold that this Court intended to reverse a number of decisions made upon careful consideration. * * *

"In our other decisions, which we have cited, it was held that time is the essence of the contract, and nonpayment at the day involves absolute forfeiture. In none of the cases was there any affirmative action by the company. Forfeiture occurred from nonpayment of the premium."

The decision of the Supreme Court of the United States is cogently stated in the syllabus in the following language, almost as appropriate to the case at bar as it was to the one in which it was used:

"When the first premium on a policy of insurance is paid by note and a receipt with such an endorsement thereon is given and accepted therefor, whilst the primary condition of forfeiture for nonpayment of the annual premium is waived

by the acceptance of the note, a secondary condition thereupon comes into operation, by which the policy will be void if the note be not paid at maturity and no affirmative action canceling the policy is necessary on the part of the insurance company if the note be not paid when due and presented; and if the policy contains a provision that no person other than the president or secretary can waive any of the conditions, a local agent has no power to extend the time of payment of the note after the same has become past due."

The Supreme Court did not mean to say that such a forfeiture *ad diem* could not be waived. On the contrary, this opinion expressly states:

"A forfeiture, of course, may be waived, for the obvious reason expressed in *Knickerbocker L. Ins. Co. v. Norton,* 96 U. S., 235, 24 L. Ed., 689, 'a party always has the option to waive a condition or stipulation [made] in his own favor', and an agent can be given such power, and, whether it has been given or not, may be proved by parol."

The same thing was said by this Court in the Cope decision, 134 S. C., 532, 133 S. E., 440. The following language of Mr. Justice Watts in that case is wholly consonant with the expressions of the Supreme Court of the United States:

"Provisions for forfeiture in an insurance contract are for the benefit of the insurer, and may be waived at the insurer's option. The policy is not void for breach of condition, but merely voidable. * * * An agent authorized to solicit insurance may waive forfeiture."

And it is submitted that, as Chief Justice Watts and Mr. Justice McKenna have said the same thing, they meant the same thing and nothing more. What is meant is that the company has an option to waive the forfeiture, not that it has merely an option to declare the forfeiture. Something must be done by the company to evidence its waiver of the forfeiture. Nothing need be done by the company to evidence the forfeiture itself which results directly from the nonpayment as stipulated by the parties. To say, in the language of

the Court below in this case, that, if the company has the right to forfeit on the happening of certain facts "and it knows that those facts have happened, and yet does not forfeit the policy, that would constitute waiver of its right to forfeit," is to say exactly that the agreement of the parties meant that the policies were to cease and determine "at the option and upon some affirmative action of the company." The quotation marks in the last sentence set out the language of the Court below to the jury and the language used in the Supreme Court decision to describe what was held error.

What was meant by the Supreme Court of the United States, and by this Court also, was pointed out by Mr. Justice McKenna's application of the rule to the facts of the *Lewis case*. There the agent, Starn, had called upon the insured after the default in the note, had sought payment of it, though unauthorized to do so, and had been tendered the payment. First quoting from the *Norton case* the familiar rule of law that "Courts seize hold of any circumstances that indicate an election or intent to waive a forfeiture," Mr. Justice McKenna said:

"We do not think such circumstances exist in this case. Of course, such circumstances must have come from the company, *or from its agent acting within his authority*. In the case at bar we need only look at that which took place after the note was given. * * * The company did nothing but send the note to Starn for collection. * * * The assured did nothing; made no movement, as far as the record shows, for its payment. In other words, the day of maturity came and went, and the note was not paid, and the condition upon which the policy should 'cease and determine' occurred, unless Starn's authority lasted and could be exercised after the note became due. * * *

"On the 29th of September * * * Starn telegraphed to the company that Lewis offered to pay the premium, and asked if he should receive it. On the 30th the company replied in the negative, and on the same day wrote to Starn."

Observe that this vital evidence was received and considered in the *Lewis case*, though excluded, as we shall see, in the present one. Mr. Justice McKenna then noticed the same policy provision that was in evidence in this case, that agents were not authorized to extend the time of payment or to collect moneys after they become due, and concluded:

"There is no evidence of any course of dealing of the company or of Starn which enlarged or modified these instructions, *or which induced and excused the default of the assured.*"

Observe that the statement of the case which is set out very fully in the report reveals these two important parallel facts: (1) The correspondence was wholly between the company and its agent Starn; it is set out in full in the statement; there was no letter from the company to the insured. And (2) "At the request of the defendant S. E. Starn returned to it the note of the insured, which thereafter continued in the defendant's possession. The defendant never offered to return the note to the insured, and never before the death of the insured did anything in the way of an affirmative forfeiture or cancellation of the policy."

If, then, action by the company was not necessary to the forfeiture, its inaction, its silence, could not be evidence of waiver or estoppel. With no evidence upon which to predicate it other than the silence and inaction of the company, it was highly prejudicial error to instruct the jury that they must find for the plaintiff if they believed from the evidence that the company was willing to extend the time of payment of the premium notes, since the only evidence upon which the jury could base any such belief was thus incompetent to create waiver or estoppel.

"In the absence of a statute, a contract made between the insured and the insurer, providing that a policy shall cease to be in effect, if a note, which has been given for the payment of a premium on the policy, is not paid at maturity, is a valid contract, and *no affirmative action by the insurer*

*cancelling the policy is necessary." Wastun v. Ins. Co.* (C. C. A.), 12 F. (2d) 422, 424, citing *Iowa Life Ins. Co. v. Lewis,* 187 U. S., 335, 23 S. Ct., 126, 47 L. Ed., 204; *Manhattan Life Ins. Co. v. Wright* (C. C. A.), 126 F., 82; *Lefler v. Ins. Co.* (C. C. A.), 143 F., 814; *New York Life Ins. Co. v. Slocum* (C. C. A.), 177 F., 842; *Reed v. Ins. Co.* (C. C.), 192 F., 408; *Philadelphia Life Ins. Co. v. Hayworth* (C. C. A.), 296 F., 339.

"In absence of contract, statute, or course of dealing, no notice of lapse of life policy for nonpayment of premium is required." *Alabama Nat. Life Ins. Co. v. Smith,* 214 Ala., 585, 108 So., 524, 525.

Where premium note and policy contain stipulation that policy shall cease on failure to pay note at maturity, such failure renders the policy void. *Hayworth v. Philadelphia Life Ins. Co.,* 190 N. C., 757, 130 S. E., 612.

Where insured gave notes for premium providing that insurance should terminate if they were unpaid when due, though insurer retained notes unpaid after maturity, the insurance lapsed. *Dunn v. National Life Ins. Co.,* 18 Ga. App., 383, 89 S. E., 432.

Where note given in payment of premium provided no method of terminating policy, held that insurer could retain note at same time terminating policy under original provisions. *State Life Ins. Co. v. Tyler,* 147 Ga., 287, 93 S. E., 415.

"Under a policy providing that failure to pay premium will avoid the policy, a failure to pay a premium constitutes a forfeiture without the necessity of formal declaration thereof by the insurer." *Underwood v. Security Life & Annuity Co.,* 108 Tex., 381, 194 S. W., 585.

"Where a life policy as well as a note given for premiums provided for forfeiture of the policy for nonpayment of the note, it was not necessary upon default in payment for the insurance company to give the insured notice of the forfei-

ture." *Home Life & Accident Co. v. Haskins,* 156 Ark., 77, 245 S. W., 181.

"Failure of the insured to make payments due upon his automobile collision insurance forfeits his right to protection, where it is so provided by the policy, and no act or declaration of forfeiture is necessary on the part of the insurer." *Cooper v. Belt Auto Indemnity Association,* 79 Pa. Super. Ct., 479.

"Under a policy providing that it should become void for failure to pay premiums when due, the nonpayment of a premium on the due date *ipso facto* caused forfeiture of insured's rights." *Home Life & Accident Co. v. Scheuer,* 162 Ark., 600, 258 S. W., 648.

"In an action on accident policy containing specific forfeiture clause for nonpayment of premiums, failure to pay on date when premium was due held to operate *ipso facto* as complete forfeiture of policy, and company need not declare forfeiture unless duty were imposed by special circumstances, whereunder silence would injuriously mislead insured." *Provident Life & Accident Ins. Co. v. Hollums,* 213 Ala., 300, 104 So., 522.

III. *Error in imposing upon the Company the burden of disproving waiver:* In *Camden Wholesale Grocery v. National Fire Ins. Co.,* 106 S. C., 467, 91 S. E., 732, 734, the Court said:

"When the plaintiff procured the policy of insurance from the defendant * * * it violated that provision of the policy that it would be void if the insured thereafter made or procured any other contract of insurance whether valid or not, and thereby worked a forfeiture of the policy. * * * It was then incumbent on the insured to show a waiver of the forfeiture * * *" citing *Spann v. Phœnix Ins. Co.,* 83 S. C., 262, 65 S. E., 232; *Wynn v. Ins. Co.,* 100 S. C., 47, 84 S. E., 306.

The *Spann case,* quoting syllabus, holds: "Upon proof of forfeiture by defendant, burden is on plaintiff to show waiver."

See, also, *Planters' Mut. Ins. Co. v. Loyd,* 67 Ark., 584, 56 S. W., 44, 77 Am. St. Rep., 136; *Western National Ins. Co. v. Marsh,* 34 Okl., 414, 125 P., 1094, 42 L. R. A. (N. S.), 991.

IV. *Error in excluding certain letters:* The discussion hereinbefore has proceeded upon the assumption that there was no evidence of affirmative action upon the part of the company, declaring the lapse, or returning the note, after its nonpayment on November 16, 1918. The company did not return the note, and, as we have endeavored to show, it was under no obligation to do so, but had the right to retain it as evidence of its nonpayment and the consequent lapse of the policy.

To go further than it was legally bound to go, and to negative any possible unfavorable inference from its silence, the defendant offered in evidence a letter from the state agents at Monroe to the home office, dated November 16th, extending the request which the insured had submitted in his letter of November 12th (addressed to the home office by the insured, but evidently transmitted to the state agents at Monroe), for an extension of the note due November 18th to January 1, 1919, and a reply to it by the home office, dated November 19th, declining the request, and stating that the policy might "be re-instated on January 1, 1919, by the payment of the note and interest and by furnishing a personal health certificate satisfactory to the Medical Department." In the meantime, on November 16th, the Monroe office had written to the insured advising him that they had submitted his request for extension to the home office. On November 21st, the Monroe office wrote to the insured that they had received a reply to their letter to the home office stating that the request could not be granted, but that the policy might be reinstated upon the terms above outlined. This letter is claimed by the plaintiff not to have been received, although it was written and mailed two months before the death of the insured.

The two letters of the Monroe office, dated November 16th, to the home office, and of the home office to the Monroe office, dated November 19th, were excluded when offered in evidence; in this the trial Court was in error. The issue of waiver must logically be determined by the intention of the insurance company. Considering the fact that the insured was invited to act through the Monroe office, and the fact that he did so act, and practically constituted that office his agent to secure the desired extension, there does not appear any valid reason why their communication to the home office, in the interest of the insured, and its reply, should not have been received in evidence for the purpose of repelling any possible inference that the company intended to waive the completed lapse of the policy.

Waiver, as has been often defined, is the *voluntary* relinquishment of a known right—that is, that it needs no consideration moving between the parties; it is unilateral and depends *entirely* upon conduct of the company; *what it did* and *what it said* was not only material but vital, for in no other way could its purpose and intention be disclosed. Upon that issue it was of no consequence whether the company's words and action were communicated to the insured or not. The jury was instructed time and again that its duty was to ascertain the purpose and intention of the company, and it was left to infer that purpose and intention from the company's apparent silence and inaction; at the same time the company was denied the right to say what its purpose and intention were, to show what it actually did and actually said, expression of its purpose and intention, particularly through the medium of communication selected by the insured himself. The exclusion of this evidence left the jury with the knowledge that the insured had written to the agent and the agent had written to the company requesting an extension, that the company had acted on the request and had expressed its action in a letter to the agent, but what that action was the jury could not know, and all intendments of the instruc-

tions were that the jury was at liberty to infer that whatever the company's action was it amounted to a waiver of the forfeiture. And all the while the company was clamoring for permission to show only that in good set terms it had refused to waive. Under the instructions, as we have seen, the burden was cast upon the defendant to prove that it did not waive, and by this exclusion it was refused permission to prove that it did not waive.

With these letters in evidence, there cannot be a question that the company declined to grant the requested extension and was determined to stand upon its right to claim a lapse of the policy, against which it voluntarily offered to relieve the insured upon his compliance with the conditions of reinstatement above outlined. Any suggestion of waiver from the lack of affirmative action on the part of the company must therefore fade from the case.

If there be any evidence in the case at all of waiver, it applies to the insured in not taking advantage of the opportunity of reinstating his policy by January 1, 1919, upon the proffered conditions. He knew when the premium note was to become due; he asked for an extension; it was refused; reinstatement was offered upon certain conditions. After this it does not appear that, knowing of the claimed lapse of the policy, he did a single thing, but apparently considered the transaction a closed incident.

Having reached the conclusion that the motion of the defendant for a directed verdict should have been granted upon the grounds that the evidence is susceptible of no other reasonable inference than (1) that the nonpayment of the premium note due November 16, 1918, under its terms and under the terms of the policy, entitled the defendant company to declare the policy lapsed; (2) that it did so declare; (3) that there is no evidence tending to establish a waiver by the company of its right to declare the policy lapsed. The exceptions raising other questions, which if sustained, would

effect simply a reversal of the judgment and a new trial, we do not consider it necessary to discuss.

There is a division of opinion among the members of the Court in reference to the effect of nonpayment of a premium note which alone contains the stipulation for a forfeiture of the policy; the contention being that in such a case the company must, upon nonpayment of the note, demand payment, and, if not made, by affirmative action declare the policy forfeited or void.

Inasmuch as the stipulation in the case at bar is contained *in both the policy and the note,* it is not necessary now to decide the mooted issue, and nothing in the opinion is intended to do so, or to intimate an opinion in reference to it.

The judgment of this Court is that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court for the purpose of entering judgment in favor of the defendant under Rule 27 of this Court.

MR. CHIEF JUSTICE WATTS concurs.

MESSRS. JUSTICES BLEASE, STABLER and CARTER concur in result.

MR. JUSTICE STABLER (concurring in result) : A careful study of the record in this case does not disclose any evidence tending to show waiver by the insurance company of the forfeiture created, or to show any course of action on its part as will estop it to claim the forfeiture under the provisions of the policy. Upon these grounds I concur in the result of the opinion.

MR. JUSTICE CARTER concurs.