## Metropolitan Life Ins. Co. v. Tye.

Nov. 12, 1943.

698

William Marshall Bullitt, Eugene B. Cochran and Bullitt & Middleton for appellant.

Zeb A. Stewart and Guy Dickinson for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

The appellee, Nora Tye, paid the premiums on a $1,000 insurance policy on the life of her husband, Arthur Tye, for eleven years, during which time they were separated but not divorced. Because of the nonpayment of premium due November 26, 1937, the policy lapsed. The insured died in April, 1938. Several reasons advanced for the avoidance of the lapse were held unsustainable in Metropolitan Life Insurance Company v. Tye, 288 Ky. 750, 157 S. W. (2d) 274. Upon a return of the case, the plaintiff amended her petition and sought to recover $1500 as damages. The verdict and judgment were for $1400.

The essentials of the cause of action pleaded and of plaintiff's contentions are disclosed in the primary instruction to the jury submitting the basis upon which a verdict could be returned in her favor. They are that after November 26, 1937, the agents of the Insurance Company wilfully and purposefully misled and deceived the plaintiff by inducing her to believe that the company was able to and would make her a loan on the policy for

the payment of the semiannual premium then due when it did not in good faith intend to make such a loan, and thus lulled her into security; that in pursuance of the plan the company withheld the policy until after the expiration of the days of grace in which payment of the premium might have been made; that but for such deceit, misrepresentation and fraud she would have obtained the money elsewhere and paid the premium in time to have kept the policy in force, and that the lapse of the insurance was the result of that fraud and deception.

Disregarding other grounds for a reversal of the judgment, it seems to us the court should have directed a verdict for the defendant, except for $262, for which it had offered to confess judgment, because of the lack of evidence sustaining the charges pleaded.

The plaintiff testified that she did not have the money with which to pay the premium and depended on borrowing it on the policy, the company's local agent said he would get it for her, and she relied upon that statement. On December 1, 1937, she gave him an application or assignment for the purpose of obtaining the loan and delivered the policy to him. She knew it would have to be sent to the home office of the company and that it would take several days. In 1932, and again in 1935, the company had loaned sufficient sums to satisfy the premiums then due, which, as is related in the opinion on the first appeal, was by mistake, since the insured only was entitled to borrow upon the policy. But about six months before this transaction the beneficiary had had her application to borrow $50 rejected because the company could not locate her husband or he refused to agree to the making of the loan to her. When the agent returned the policy about February 1st, which was after the expiration of the grace period, the plaintiff asked him about the matter and he responded that he supposed the application had been "laying in the office." She testified that she could and would have borrowed the money elsewhere with which to pay the premium except for the "conduct of the company." She admits seeing the agent frequently but says she did not talk to him about the delay after she had made the application for the loan.

The evidence of the company is that the plaintiff was told by the agent on December 10th or 12th, which was

before the expiration of the grace period, that no loan could be made to her without her husband's consent and she asked the agent to try to get his signature. Her response to this testimony of the agent is merely that she did not remember it. The local agent then requested the home office to make the loan because of the circumstances, since she did not know her husband's whereabouts. She admits that the husband had written her asking what she wanted the money for, but is not certain whether it was on this occasion or when she tried to borrow the $50, a few months before. The company located the insured in Chicago, and on December 23rd asked him to sign a loan certificate in order to pay the semiannual premium. He declined and asked to be paid the cash surrender value of the policy. He was advised that the company had refused to make the loan on the application of the beneficiary. The local agent testified that he was seeing Nora every week or so collecting premiums on an industrial policy and told her what he was hearing about the transaction from the company, which was that it could not make the loan without the waiver or consent of her husband. He told her very fully and clearly that the policy would lapse if the premium was not paid and she never offered to pay it. This testimony is not contradicted.

The court has gone far to prevent a forfeiture of an insurance policy for nonpayment or delay in payment of the premium, and holds that an insurance company is estopped to claim a forfeiture if it lulls the insured by any conduct or misrepresentation into believing it would not be or had not lapsed. New York Life Insurance Company v. Evans, 136 Ky. 391, 124 S. W. 376. It appears the plaintiff has tried to bring her case within this law. But the state of facts and the basis of the suit are of a different character.

As was declared in the opinion on the first appeal of this case, there was no obligation upon the company to make loans on the policy to the plaintiff as beneficiary, for she had no vested interest in it nor any right to borrow upon it; and that there was no estoppel against the company for she could not have been misled since she had learned this absence of right by the denial of her application for a loan in the previous July. There was no cause of action for damages because to constitute a tort not only must a duty and right exist but there must be conduct constituting a breach of duty and a violation

of a right. St. Matthews Bank & Trust Co. v. Mitchell, 254 Ky. 156, 71 S. W. (2d) 2; Haney v. Stamper, 277 Ky. 1, 125 S. W. (2d) 761. Nor can the cause of action be planted on the company's failure to keep a good faith promise made without consideration. It is not deceit, misrepresentation or fraud merely to break a promise. Collins-Moore & Co. v. Clement, 256 Ky. 731, 736, 77 S. W. (2d) 1. Instead of an absence of good faith, we think the evidence shows the company endeavored to help the beneficiary by locating and trying to get the insured to waive the right, which was his only to exercise.

As stated, there is no need for us to consider the sufficiency of the amended petition or other grounds urged for a reversal. We are of opinion that the court should have sustained the defendant's motion for a directed verdict.

The judgment is reversed.