10996

HIGHTOWER v. METROPOLITAN LIFE INS. CO.

(113 S. E., 478)

INSURANCE—QUESTION OF WAIVER OF FORMAL STEPS FOR REINSTATEMENT OF POLICY HELD FOR THE JURY.—On evidence of retention by life insurer of money order for enough to pay for reinstatement of a lapsed policy, and of insured's nonreceipt of letter from insurer

inclosing a reinstatement blank, *held,* that the question of waiver of policy requirement of formal application for reinstatement and showing of insurability was for the jury.

Before TOWNSEND, J., Bamberg, November, 1921. Affirmed.

Action by Marrie Hightower against Metropolitan Life Ins. Co. Judgment for plaintiff and defendant appeals.

### STATEMENT OF FACTS

This is an action on a policy of life insurance, in which the plaintiff herein was named as the beneficiary. At the conclusion of the plaintiff's testimony, the defendant made a motion for a nonsuit, which was refused, and at the conclusion of all the testimony the defendant made a motion for a directed verdict, which was also refused. The jury rendered a verdict in favor of the plaintiff for $1,000 (the full amount claimed), and the defendant appealed upon the following exceptions:

(1) "His Honor, the presiding Judge, erred in overruling defendant's motion for nonsuit upon the ground of such motion; the error being that his Honor should have held that under the terms of the contract of insurance and plaintiff's testimony the policy in question had lapsed for nonpayment of premiums, and should have granted the nonsuit."

(2) "His Honor, the presiding Judge, erred in overruling defendant's motion for directed verdict upon the ground of such motion; the error being that his Honor should have held that under the policy and testimony there was no evidence whatsoever of any waiver by defendant company, and should have directed a verdict for defendant."

The defendant relied upon the following as a defense:

"Said Elijah Hightower made written application to defendant for insurance on his life, and pursuant to said application defendant duly made and delivered to said

Elijah Hightower its said policy of insurance, numbered two million three hundred and eight thousand six hundred seventeen–A (2308617–A) for one thousand ($1,000.00) dollars, said policy bearing date April 14, 1919, a true and correct copy of which is hereto attached, marked 'Exhibit A,' and made a part thereof. Said policy was made in consideration of the payment of the first premium thereon of fifteen and 79/100 ($15.79) dollars, the receipt of which was acknowledged therein, which said premium constituted payment for the period terminating on the 14th day of October, 1919, but that in and by the terms of said policy it was provided that said policy was issued in consideration of the application therefor and of the payment of the semiannual premium of fifteen dollars and seventy-nine cents upon each 14th day of April and October thereafter for the first twenty (20) years, and of the payment annually thereafter of ten ($10) dollars on the 14th day of April until the death of the insured. That in respect to the payment of premiums said policy provided: 'All premiums are payable in advance at said home office or to any agent of the company upon delivery, on or before date due, of receipt signed by the president, vice president, secretary, or actuary of the company, and countersigned by said agent.' 'A grace of thirty-one days, without interest charge, shall be granted for the payment of every premium after the first, during which period the insurance shall continue in force. . . . The payment of a premium or installment thereof shall not maintain the policy in force beyond the date when the next premium or installment thereof is payable except as herein provided.' That said Elijah Hightower duly paid the semiannual premiums due on October 14, 1919, and April 14, 1920, either on the due dates thereof or within the period of grace above specified, but wholly failed to pay the premium due October 14, 1920, or any portion or installment thereof, whereby, under the terms of said policy, said policy lapsed on November 14,

1920, and there was no insurance in force under said policy or otherwise at the time of the death of said Elijah Hightower."

The policy also contains this provision:

"*Reinstatement.*—If this policy shall lapse in consequence of nonpayment of any premium when due, it may be reinstated at any time upon the production of evidence of insurability satisfactory to the company. . . ."

## TESTIMONY

In so far as pertinent, the testimony for plaintiff was as follows:

Marrie Hightower, colored, being duly sworn, testified on direct examination:

"I can read; that (referring to exhibit) is the policy delivered to my husband by defendant. I remember that premiums were due in amount $15.79 every six months in April and October. When the October, 1920, premium came due, the money was not sent off on the 14th of October; it was a few days late; it was sent by money order on 30th of November, 1920, to Columbia. My husband remained in good health about three weeks after 30th of November, 1920.

"Q. When the October premium came due, who notified you? A. No gentleman at all.

"Q. Did you receive any written notice? A. No, sir.

"After the money was sent off, I did not hear anything from the defendant until about 24th of January, 1921, after Elijah was dead. After 30th of November and before Elijah died I wrote the company once or twice. The letter dated 24th of December is one letter I wrote. (Exhibit No. 4.) I wrote the company to know if they received the money and what they were going to do about it, and got no reply at all."

Cross-examination:

"The defendant sent my money order back to my lawyer; they kept it a good while, but did not keep it and spend

it. I did not get a letter from the company, dated 1st of December, until the 24th of January. I admit I did not pay the premium when due; that's why I wrote the letter; the premium was due on 14th of October. I never got a letter, nor a reinstatement blank, till Elijah was dead. I never got but one letter from them. My correct address is Bamberg, South Carolina, and it was not changed between 14th of October and time Elijah died.

"Q. How many times did you hear from them between the time you first sent the money order and the death of your husband? A. I did not hear from them; not one time.

"Q. Did you get a letter from them, in which they told you that your policy was already overdue, and they could not take your money, but they would send you a form to have Elijah fill out, and if he filled it out and stood a good examination they would send it to the home office, and the home office would reinstate the policy? A. What time you mean?

"Q. On the first of December? A. No, sir.

"Q. Did you ever send you a letter like that? A. No, sir; I never heard from them.

"Q. They never sent you a blue thing for Elijah to fill out? A. No, sir; when I got the letter, he was dead.

"Q. They did not write you but one letter? A. No, sir; just one."

Redirect examination:

"Q. You know that your husband lived long enough after the money was sent off to be reinstated, if he had a chance to? A. Yes, sir.

"Q. And he was in good health? A. Yes, sir.

The pertinent testimony of defendant was as follows:

Miss E. J. Barnes, white, being duly sworn, testified as follows:

"I am assistant cashier of defendant in its branch at Columbia. I received the money order for $15.79 from Elijah Hightower on 1st of December. I then wrote him a letter (Exhibit No. 3), and filled out the necessary part of the reinstatement blank, and mailed the letter to Elijah Hightower, Bamberg, South Carolina. I personally mailed the letter. I also got a letter from Elijah Hightower, dated the 24th of December, and thereupon wrote him another letter asking him to return that blank (Exhibit No. 5). Some time afterwards I sent another letter, with another reinstatement or revival form. (Here the original revival form is identified by Miss Barnes as being in her handwriting, this form having been produced by plaintiff under notice to produce. Exhibit No. 6. Miss Barnes also identified the stub of the revival form retained at Columbia office, and introduced in evidence. Exhibit No. 6.) I attached this stub to the money order, and put both in the safe, to be kept until the revival form was returned. I wrote Hightower a third letter, just like the first one, inclosing another revival form."

Cross-examination:

"Q. Did I understand you to say that you mailed these letters yourself? A. Yes, sir; I know I mailed the letters. I dropped them in the mail box, but, of course, don't know of my personal knowledge whether or not they arrived in the town of Bamberg."

J. R. Roseberry, white, being duly sworn, testified as follows, on direct examination:

"I am manager of the Columbia office of defendant. I know the money order was received about 1st of December. I got sick and left the office about 17th of December, 1920, and returned to the office about 7th of April, 1921. Mr. W. F. Brehm took charge of the office about the time I left, and continued in charge until I returned. When premium payments are presented in person beyond the grace period, our custom is not to accept them, except on an

application for reinstatement; but, of course, we cannot prevent people mailing in premium payments after the expiration of the grace period. When such premiums are mailed in, we immediately write the insured that the policy has been canceled, and send them application for reinstatement. We attach the money to the reinstatement stub and put both in the safe. We do not deposit or use the money. We keep the money pending correspondence with the insured as to his reinstatement. The length of time we keep the money varies; some people respond promptly, but there are others to whom we have to write several letters. If the case seems hopeless, we return the money and tell the insured his policy has been canceled. The policy in this case was canceled on 14th of November, the day the grace period expired; but the actual record of cancellation was made in our office on 27th of November, the day we returned to the home office the official premium receipt, unpaid."

W. F. Brehm, white, being duly sworn, testified as follows on direct examination:

"I am a general deputy manager for the defendant. My duties require me to take charge of districts to relieve men who are absent. I took charge of the Columbia office when Mr. Roseberry got sick. I have seen the money order in question; in fact, I returned it, but I did not know it was in the Columbia office until this suit was started, when it was brought to my attention by a young lady in the office; they found it in the safe. I kept the money order some ten days or two weeks after the suit was started; in fact, I did not know what to do with it. I think I returned it on the 25th of February, 1921."

Albert H. Phillips, white, being duly sworn, testified as follows:

Direct examination:

"I am a clerk employed by the Metropolitan Life Insurance Company of New York, and on September 15,

1920, and since, have had charge of the addressing and mailing of notices of premiums due. On September 15, 1920, I duly mailed on behalf of the said company a printed notice of premium due to Elijah Hightower at Bamberg, South Carolina, who was insured under policy No. 2308617 –A. Such notice contained the number of the policy, amount of premium due on such policy, and the day when the said premium was payable, and the notice was inclosed in a securely sealed postpaid envelope, having a return address printed thereon, and duly addressed to Elijah Hightower at Bamberg, South Carolina, which was the address of said Elijah Hightower last known to me and said company. This premium notice was mailed by depositing the same in the post office in the city of New York. I was duly authorized by said company to mail said notice. The notice was not returned to the company as uncalled for, or for any other reason. The reason that I know that I mailed the notice on said date is that a number of similar notices were prepared for mailing on said date, and I personally delivered said notices to the post office in the city of New York, and on the day that I mailed them, September 15, 1920, I made affidavit to the effect that I had so mailed them, and said notice to Elijah Hightower was included in that affidavit."

Cross-examination:

"I have no personal knowledge that said premium due notice was actually received by Elijah Hightower."

### EXHIBITS

#### Exhibit No. 2

Bamberg, S. C., Nov. the 29th, 1920.
"2308617.

"Dear Sir: I write you all tonight to let you all hear from me and to send and ask you all to please excuse my long time not sending my payment. The time have been so

that I could not get it no sooner, but hope that you all will excuse me for it.

"Yours truly,                    Elijah Hightower."

### Exhibit No. 3

(Letter from Defendant's Columbia Office.)

"December 1st, 1920.

"Elijah Hightower, Bamberg, S. C.—Dear Sir: We are in receipt of your money order for $15.79, for which please accept our thanks. This premium was due on October 14th, and as the grace period of thirty-one days had expired before you sent in the money, it is' necessary for you to complete a satisfactory reinstatement blank in order that your policy may be restored. We are sending you necessary blank, on which you will please enter in the proper places any medical attention or illness which you have had since your policy was issued. When this is done, kindly sign your name on the line marked with a cross, have some one to sign at the left of your signature as a witness, and return the form to me in the inclosed envelope. Please have these signatures in ink. Upon receipt of this form properly completed we will give the matter of reinstatement prompt attention.

"Thanking you in advance for your prompt attention, we remain,

"Yours truly,

"B.                              Superintendent."

### Exhibit No. 4

"Policy No. 2308617–A

"Bamberg, S. C., December the 24th, 1920.

. "Dear Sir: Did you all get that $15. and 79c that I sent you all on the 30th of November last for my policy? I have not received the receipt yet. Please send it, or let me know did you get it.        Elijah Hightower."

Exhibit No. 5

"December 29th, 1920.

"Elijah Hightower, Bamberg, S. C.—Dear Sir: In response to your letter of December 24th, 1920, we beg to advise that we wrote you under date of December 1st, acknowledging receipt of your money order, and sent you a form for you to complete, but you have not returned it to us. This form must be completed, signed, and witnessed before we can revive your policy, and we would thank you to give the completion of this form immediate attention.

"Yours truly,      Gen. Deputy in Charge."

"Columbia, S. C., February 25, 1921.

"Mr. W. E. Free, Esq., Bamberg, South Carolina—Dear Sir: Re Marrie Hightower v. Metropolitan Life Insurance Company. We herewith return to you as attorney for Marrie Hightower, post office money order, number 59036, serial number 96823, dated Bamberg, S. C., November, 1920, payable to Metropolitan Life Insurance Company, in amount $15.79, and also duplicate thereof, 107925, dated January 19, 1921. You will observe that neither the original nor the duplicate was indorsed or cashed by the Metropolitan, but both were held by this office pending reinstatement or refusal to reinstate policy number 2308617--A by our home office. This policy lapsed for nonpayment of a premium which was due October 14, 1920, and since the policy was not reinstated we are returning the money orders.

"Yours very truly,      Wm. F. Brehm,
"WFB/D      General Deputy in Charge."

*Messrs. Elliott & McLain,* for appellant, cite: *Defendant had to accept tendered premium conditionally:* 14 S. E., 506; 107 N. W., 646; Colley Br. on Ins., 2395; No waiver; 108 S. C., 137; *Acceptance of premium on conditions which were never met did not revive policy:* 1 Williston Conts., Secs., 52, 81.

*Mr. W. E. Free,* for respondent, cites: *Waiver:* 42 S. C., 14; 43 S. C., 26; 46 S. C., 546; 96 S. C., 375. *Estoppel:* 110 S. C., 315; 25 Cyc., 858, 9; 25 Cyc., 867; 95 U. S., 333; 96 U. S., 577; 106 U. S., 37.

September 1, 1922.

The opinion of the Court was delivered by Mr. Chief Justice Gary.

The foregoing statement of facts practically embodies the entire record. There is no doubt that the failure of the insured to pay the premium which became due on the 14th of October, 1920, caused the policy to lapse, but it was provided in the policy that it might be reinstated at any time upon payment of the past-due premium and the production of evidence of insurability satisfactory to the company.

On the 29th of November, 1920, the insured wrote a letter to the defendant, inclosing a money order in the sum of $15.79, to pay the premium of insurance necessary for a reinstatement of the policy. This letter with its inclosure was duly received by the company, which introduced testimony to prove that it wrote a reply, dated the 1st of December, 1920, inclosing a reinstatement blank, and that said letter was duly placed in the post office, properly addressed to the insured. The plaintiff offered evidence to show that the letter was not received by the insured. This is the main issue in the case.

The fact that the defendant may have deposited the letter, dated the 1st of December, 1920, in the postoffice, while raising a presumption that it was received by the insured in due course of mail, nevertheless there are facts and circumstances tending to rebut such presumption, sufficient to require the submission of such issue to the jury. As we have reproduced these facts and circumstances, it is not necessary to discuss them in detail. If the defendant company retained the premium tendered by the insured,

and failed to take the steps which defendant claims were taken to advise the insured of the necessity of making formal application for reinstatement, under the circumstances indicated, we think there was some evidence tending to establish waiver.

The judgment is affirmed.

MR. JUSTICE FRASER concurs.

MR. JUSTICE MARION (concurring): I concur. Granting that the testimony of defendant's witnesses, if believed, would as a matter of law have negatived entirely any inference of waiver, I think it clear that the determination of that issue involved passing upon the credibility of the witnesses, a matter for the jury, and not for the Court. Uncontradicted testimony does not amount to the establishment of facts to which it is directed, if such facts are in dispute under the general issue joined.

MR. JUSTICE COTHRAN (dissenting): On the 14th of April, 1919, the defendant issued a policy for $1,000 upon the life of Elijah Hightower, payable in the event of his death to his wife, Marrie Hightower. The premium was $15.79, payable at the time of issuing the policy and on the 14th days of October and April thereafter. The cash premium was paid; also those of October 14, 1919, and April 14, 1920. The premium due October 14, 1920, was not paid at maturity. Under the terms of the policy a grace period of 31 days was allowed, which permitted that premium to be paid at any time on or before November 14th. The policy further provided that, if the policy should lapse in consequence of the nonpayment of any premium when due, it might be reinstated at any time upon production of satisfactory evidence of insurability and the payment of all overdue premiums, with interest.

On the 29th of November, two weeks after the expiration of the grace period, but within the time for reinstatement, the wife of the insured, writing in his name, mailed to the defendant's agent at Columbia a post office

money order for $15.79, expressing his inability to pay earlier, and begging excuse for "my long time not sending payment."     It is conceded that this remittance was received by the company.    The testimony on behalf of the defendant tended to show that the insured was duly notified on September 15th of the maturity of the premium on October 14th; that on December 1st the company acknowledged receipt of the letter of November 29th, inclosing the money order, and called attention to the fact that the policy had lapsed, and to the necessity of complying with the provisions for reinstatement, inclosing blank form for that purpose.

On December 24th the wife again wrote to the company, in the name of the insured, inquiring about the remittance of November 29th, and stating that no receipt had been received therefor.    The testimony on behalf of the defendant tended to show that on December 29th the company acknowledged receipt of this letter of December 24th, advising that they had acknowledged receipt of the letter of November 29th on December 1st, and sent to insured the reinstatement form.

The insured died on January 14, 1921, of which the company was not notified until January 28th.    On January 19th, five days after the death of insured, the beneficiary sent to the company a duplicate of the money order dated November 29, 1920.    Both money orders were returned to the plaintiff's attorney on February 25, 1921, after suit had been commenced on February 10th.

The evidence is plenary that the company mailed to the insured, at his address, Bamberg, S. C., the notice of September 15, 1920, their reply to the letter of November 29th inclosing the money order for $15.79, calling his attention to the provisions for reinstatement and inclosing blank form, and their reply to the letter of December 24th, in which the insured made inquiry as to the remittance, advising him of their acknowledgment on December 1st of the

letter of November 29th and transmitting the reinstatement form.    The policy was canceled on November 14th, the day the grace period expired; but the actual record of cancellation was not made until November 27th, the day the manager returned to the home office the official premium receipt unpaid.

The plaintiff, the beneficiary of the policy, testified that she did not receive the notification letter of September 15th, the company's letter of December 1st, nor that of December 29th.    There was no evidence of the fact that the insured had not received them; there was nothing to rebut the presumption of fact that a letter duly mailed reached its destination.    There is but a bare inference that the plaintiff would not have written the letter of December 24th if her husband had not directed her to do so, and that he would not have so directed if he had received the company's letter of December 1st.    There was no evidence that she got his mail from the post office, or attended to his business affairs, or that she was directed by him to write any letter to the company.    All that appears is that she, the beneficiary, received no letters from the company, and was ignorant of the company's attitude in the matter.

But assuming that there was sufficient evidence in the case to require the submission to the jury of the issue whether or not the insured received the letters referred to, upon the issue of waiver by the company of the forfeiture of the policy by nonpayment of the premium due on October 14th, and by the failure of the insured to comply with the provisions for reinstatement, it is absolutely immaterial whether he received them or not, so long as the defendant is shown to have done all that it could do, declarative of its purpose to insist upon the forfeiture.    In the case of *Herndon v. Railway Co.,* (S. C.,) 111 S. E., 13, it is held, upon the authority of the cases cited, that the Court may assume to be true facts as to which there is no contradictory evidence.    The Court is therefore justified in assuming

that the company duly mailed the letters of September 15th, December 1st, and December 29th, notifying the insured of the maturity of the premiums, acknowledging receipt of his overdue payment, calling his attention to the lapse of the policy and the necessity of reinstatement, acknowledging receipt of his inquiry, repeating the acknowledgment of. the receipt of the letter of November 29th, and again calling his attention to the necessity of reinstatement.

The question of waiver being one of intention, it clearly is immaterial whether or not the insured actually received these letters from the company. Otherwise the intention to waive, which by these letters is shown not to have existed, must be declared by the Court to have existed by reason of the failure of the insured to receive the letters, a failure for which the company was not responsible, but which was due to the fault of the postal department, or the carelessness of the addressee or some one acting for him. It should be remembered that, where the policy admittedly has lapsed for nonpayment of the premium and by failure to comply with the provisions for reinstatement, and the beneficiary relies upon a waiver by the company of the forfeiture by reason thereof, the burden is upon the beneficiary to establish the company's voluntary relinquishment of a known right, which may be shown by conduct incompatible with a purpose to insist upon the forfeiture.

Outside of the retention of the premium, to which I shall presently refer, there is not a single circumstance in the case remotely suggestive of such waiver, except the failure of the insured to receive the company's communications, a failure for which it can in no way be held responsible. There does not seem to be any doubt as to the proposition that, if the company by a course of dealing, as in *McManus v. Insurance Co.,* 96 S. C., 375, 80 S. E., 613, has induced the assured to believe that strict compliance with the requirement of prompt payment of premiums will not be insisted upon, or has negligently failed to answer a letter

inclosing an overdue premium, the question of waiver must be submitted to the jury. But where there is no evidence of such previous course of dealing, and all the evidence shows that the company has done all that it could have done declarative of its purpose to insist upon a forfeiture, such intention should not be converted into a waiver by a circumstance not of its making.

Referring now to the contention that the retention of the money order by the agent of the company was some evidence of waiver: It may be assumed, and I think justly, that if an authorized agent should receive an overdue premium, remit it to the company, and the company should retain it an unreasonable time without objection or notification to the insured that fact would be some evidence of a waiver. But in this case the retention must be taken with its attendant circumstances. It would not be just to single out a fact, and argue that it, regardless of the attendant circumstances, is evidence of waiver. Here the money order was received and kept in its original condition; it was not cashed nor remitted to the company; the company was notified of the cancellation, and the original official receipt returned to it; it was held by the agent and the circumstances to the insured. In addition to this the policy provides:

"No agent is authorized to waive forfeitures, or to make, modify, or discharge contracts, or to extend the time for paying a premium."

It is true that it has been held, and properly so, that this provision may be waived, as well as any other provision of the contract in this case; however, there is not the slightest evidence of such waiver by the company. See *Rabb v. Insurance Co.*, 108 S. C., 137, 93 S. E., 711. On the whole, both upon the question of waiver by not answering the communication of the insured and by retaining the money order, it is impossible to charge the company with evidence of waiver, except upon the theory that it is responsible for the

failure of the insured to receive its communications, a failure which it seems to me it is impossible to lay at the door of the company.

I think, therefore, that the motion for a directed verdict in favor of the defendant should have been granted.