13215

FARMERS & MERCHANTS BANK v. PEOPLES FIRST
NATIONAL BANK OF CHARLESTON

(159 S. E., 617)

*Messrs. Albert F. Woods, Augustine T. Smythe* and *David J. Jenkins,* for appellant,

*Messrs. Huger, Wilbur, Miller & Mouzon,* for respondent,

July 31, 1931.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

The following succinct statement of fact is taken from the transcript of record:

"The facts in the case briefly stated are that on or about November 24th, 25th and 26th, 1924, the plaintiff bank sent to the defendant bank for deposit and collection checks of Atlantic Coast Lumber Corporation drawn on the Bank of Andrews at Andrews, S. C., in the aggregate amount of Eight Hundred Eighty-seven and 71/100 Dollars ($887.71). The defendant bank forwarded these checks to Bank of Andrews, being the bank upon which they were drawn, and being the only bank at Andrews. That bank charged them on its books to the account of Atlantic Coast Lumber Corporation, which account showed a credit balance sufficient to pay the checks, marked the checks 'Paid' and delivered them to the Atlantic Coast Lumber Corporation, and forwarded to the defendant bank at Charleston the check of the Bank of Andrews, drawn on New York in an amount equal to the aggregate of the checks forwarded to it for collection. The defendant bank upon receipt of this check forwarded it to New York for collection, but before it reached New York and was paid, the Bank of Andrews closed and the New York Bank refused to pay it. Meanwhile, the defendant bank had placed the amount of these items to the credit of the

plaintiff bank on its books in the checking account which the plaintiff bank maintained in the defendant bank. Upon receipt of advices from New York that the check above referred to had not been paid, the defendant bank charged this amount to the account of the plaintiff bank on its books and notified the plaintiff bank that it had done so, to which the plaintiff bank did not accede.

"Some nine months thereafter, the defendant bank forwarded to the plaintiff bank items for collection. It was the custom of the plaintiff when it collected these items to remit to the defendant bank for them. In this instance the plaintiff bank undertook to remit for these collected items in the form of checks drawn on the deposit account maintained by the plaintiff bank in the defendant bank. In this instance, due to the defendant bank having charged the account of the plaintiff bank with the Andrews items, these checks drawn by the plaintiff upon the defendant bank in payment of items which the plaintiff had collected for the defendant, constituted an overdraft and the defendant bank therefore refused to pay these checks. There would have been no overdraft had the credit in favor of the plaintiff for the Andrews items remained on the books of the defendant.

"The defendant bank demanded payment of the items which it had forwarded the plaintiff bank for collection and informed plaintiff that, failing to receive payment, it must notify its customers that the items were uncollected. The defendant bank also took the matter up with the State Bank Examiner, who advised plaintiff to make its checks good. On September 8, 1925, plaintiff wrote the defendant enclosing a draft for $1,015.14, and defendant thereupon paid the plaintiff's two checks above referred to. In the same letter the plaintiff asked that it be given a full history of the matter of the Andrews checks. * * * On September 12, 1925, defendant wrote plaintiff a history of the Andrews checks, but the defendant had previously written the plaintiff in this connection. * * * On September 12,

1925, defendant wrote plaintiff that its account still showed an overdraft of $3.30, due in part at least to the expense of telephoning the Bank Examiner about the checks above mentioned and requesting that the overdraft be made good. The plaintiff paid this small overdraft and the account was closed on September 16, 1925."

About the 5th day of October, 1929, plaintiff commenced this action to recover from the defendant $887.71, the aggregate amount involved in the Bank of Andrews transaction, and interest from December 1, 1924. At the trial on the case, defendant made a motion for a directed verdict on the ground that the evidence conclusively shows that in September, 1925, plaintiff waived any right of action it may have had. The motion was granted, and plaintiff appeals.

The matters relied on to show waiver begin with the forwarding to the plaintiff by the defendant of some items for collection and end with the payment of $3.30 to the defendant by the plaintiff on September 16, 1925, as set out in the statement of fact. The respondent contends that the culmination of this transaction, namely, the deposit with defendant by plaintiff of $1,015.14, and, a few days later, of $3.30, constitute waiver, as a matter of law, of any claim which plaintiff may have had against defendant in connection with the Bank of Andrews transaction, while appellant, though admitting that it is possible to infer from certain of its acts an intention to relinquish its claim by payment of the overdrafts, contends that its conduct at that time is subject, under the testimony, to an entirely different construction.

Waiver has been frequently defined as the voluntary relinquishment of a known right and may be express or implied. Appellant contends that there is some evidence that the plaintiff, when it paid the alleged overdrafts in September, 1925, did not know its rights in connection with the Bank of Andrews transaction, but we cannot agree with this position. Plaintiff's part in this transaction was conducted by

experienced business men, and it had been fully advised as to the entire situation long before any question arose in September, 1925, in connection with the items submitted to the plaintiff by the defendant for collection.

Appellant also contends that the deposits made in September, 1925, were not voluntary payments, but were made under duress or coercion, and so could not constitute a voluntary relinquishment of its rights in the premises. To support that contention, it relies upon the facts that the State Bank Examiner advised it "to make its checks good," and that defendant informed it that, "failing to receive payment, it must notify its customers that the items were uncollected."

In so far as the communication from the Bank Examiner is concerned it is only necessary to say that it was merely "advice" and nothing more, the examiner having no authority whatever to require or compel the plaintiff "to make its checks good," and that, furthermore, what was ·done by the examiner, a third party, could not constitute coercion or duress on the part of the defendant, in the absence of a showing that defendant instigated or was responsible for the advice given; the mere fact that defendant took the matter up with him being insufficient for that purpose. The voluntary character of an act relied on to show waiver must not be confused with the reasons prompting such act. A person's action may be due to cogent reasons and yet be entirely voluntary. Such a distinction would apply here; the Bank Examiner's advice might have been a moving reason for plaintiff's act, but yet, emanating from a third party unconnected with and independent of ·the defendant, it could have no bearing on the question whether, as it affected defendant, such act was voluntary.

Nor can we see how the statement made to the plaintiff by the defendant with reference to the contemplated notification to its customers that certain items were uncollected could constitute such coercion or duress as would render involuntary the deposits thereafter and con-

sequently made with the defendant by the plaintiff. In the first place, it would seem that such a notification would be the natural and usual thing under the circumstances. And, if plaintiff believed it was in the right, it could have compelled the defendant to take the matter into Court or abandon its claim; or, if such course did not seem advisable, it might have accompanied its remittance with the statement that it did not thereby waive any of its rights in the Bank of Andrews transaction; or it might have sent its check on some other bank to take care of the items collected. It followed none of these courses, but transmitted $1,015.14 to cover the checks it had issued against the defendant. We do not wish to give undue importance to the small payment of $3.30 made a few days later, but the fact that this overdraft in part was due to expenses incurred in connection with the Bank of Andrews matter, and the further fact that at the time of this payment plaintiff had fully paid the items sent to it for collection, lend force to the idea that the plaintiff in making the first remittance intended to abandon its position and waive whatever claim it may have had against the defendant in connection with the Bank of Andrews checks. It may be well to remark in this connection, that the question of intent in the matter of waiver is referable not to the secret understanding of a party, but to his intention as indicated by language or conduct. *Davis v. Fenner*, 30 Pa. Super. Ct., 389; 40 Cyc., 263.

We are not unmindful that waiver is ordinarily a question for the jury under proper instructions from the Court, but, when the facts are undisputed and but one inference can be drawn from them, it becomes a matter of law. A careful examination of the entire record in this case convinces us that the only inference that can be drawn from the evidence is that the deposits made with the defendant by the plaintiff in September, 1925, were voluntary. The other elements of waiver being likewise present, the trial Judge was right in directing a verdict.

The judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES COTHRAN, CARTER and BONHAM concur.