13385

HARVEY v. JEFFERSON STANDARD LIFE INS. CO.

(164 S. E., 6)

428

*Messrs. Brooks, Parker, Smith & Wharton* and *T. M. Boulware,* for appellant,

*Mr. Randolph Murdaugh,* for respondent,

April 13, 1932.

The opinion of the Court was delivered by Mr. Justice Stabler.

This is an action on an insurance policy for $1,000.00, issued by the defendant company on the life of one Willie Brant, who died June 25, 1929. A loan had been made on

the policy, reducing the amount of the claim to $623.00, and interest thereon. Mamie Sue Brant, the beneficiary and wife of the insured, died May 26, 1930, and the respondent, Lorena B. Harvey, their only child, was appointed administratrix of the estate of her mother, and, as such, was duly substituted as plaintiff. The issue made by the pleadings is whether the policy was in force at the time of the death of the insured, or whether it had lapsed and the plaintiff was entitled only to a paid-up policy for $132.00. On trial of the case, defendant's motion for a directed verdict for that amount in favor of plaintiff was overruled by the Court, upon the ground that there was evidence of waiver by the company of the forfeiture, which required the submission of the case to the jury.

The main question presented by the appeal is, Did the defendant waive compliance with the following provision of the policy: "Should this contract lapse because of default in any premium, or interest due on any loan, it may be reinstated at any time within three years after lapse, provided satisfactory evidence of insurability be furnished the company, and all arrears with interest thereon be paid."

It is elementary that forfeiture is not favored by the Courts; it is also elementary that, if there is any testimony tending to show waiver of the forfeiture, an issue of fact is made for the jury, unless only one inference can be drawn from the evidence, when the question becomes one of law for the Court.

Waiver has been frequently defined as "the voluntary relinquishment of a known legal right," and is referable to the intention of a party as indicated by language or conduct.

In 27 R. C. L., at page 908, we find: "To constitute a waiver within the definitions already given, it is essential that there be an existing right, benefit, or advantage; a knowledge, actual or constructive, of its existence, and an intention to relinquish it."

Such a provision as that above quoted is intended for the protection of the company, in the reinstatement of a policy

after any lapse thereof, "because of default in any premium, or interest due on any loan." Under such provision, the company has the legal right to require the insured, as a prerequisite to reinstatement of a lapsed policy, to furnish "satisfactory evidence of insurability," and to pay "all arrears with interest thereon," or, upon his failure to comply with either of these conditions, *to deny reinstatement;* of course, it could waive the forfeiture of the policy by relinquishing its right to require a·compliance with such provision. Did it do so in this case?

W. J. Harter, a witness for the plaintiff, testified that he was engaged in business with Willie Brant, and that, at the request of Mrs. Brant, Willie's wife, he sent to the company a check for $59.76 in payment of the past-due premium and interest on the policy loan; that before mailing the check, he took up the matter with the company through its agents, Liles & Liles, at Orangeburg; that, upon information given him by them, he called the head office of the company at Columbia, S. C., and talked with its head manager at that place, a man by the name of Passmore; that Passmore told him the insured was in arrears with his policy in the sum of $59.76; that the witness asked him whether, if he would send the company that amount, it would renew Brant's insurance and put him in good standing, and that Passmore replied that it would; that, pursuant to this conversation, he mailed to Passmore at Columbia a check payable to the company for that amount, and that this check was received and deposited by the company, was returned to the bank upon which it was drawn, and was paid.

Passmore, as it appears from the evidence, was an agent of the company, located at Columbia, and duly authorized to receive renewal premiums, etc., and knew that Brant's policy had lapsed for nonpayment of the premium. However, with knowledge of this fact, and with the further knowledge that the company, under the policy, had a right to require that the insured furnish satisfactory evidence of his insurability as a condition of reinstatement,

he entered into negotiations with the insured, through Harter, for reinstatement of the policy, without requiring any evidence of insurability. In other words, the company, in effect, said to the insured through its agent, Passmore: "A forfeiture of the policy exists by reason of your failure to pay the premium when due, and under its provisions, if you desire to be reinstated, we may require you to furnish us satisfactory evidence of your insurability, as well as to pay all arrears and interest thereon; but if you will pay the arrears with interest, we will reinstate the policy without requiring you to furnish any evidence of your insurability." The arrears were paid pursuant to this arrangement, and whether the company, by such acts and conduct, intended to waive the forfeiture of the policy, was an issue of fact for the jury.

It is urged, however, that, as Passmore did not know the insured was ill, there could be no waiver on the part of the company. This position is unsound, for the reason that it was not a question of waiving by the company of the physical condition of the insured at the time of the application for reinstatement, but of waiving the requirement of the policy for the furnishing by the insured, as a prerequisite of reinstatement, of satisfactory evidence of his insurability; whether in the form of a health certificate or otherwise. This is not a matter in equity but an action at law, in which matters of fact are for the jury; and the question presented to the Court is not whether the jury reached a correct conclusion under the evidence, but whether there was any testimony tending to show waiver on the part of the company by its conduct, which would require the submission of that question to them; and, as we have indicated, there was unquestionably such testimony. Citation of authority is unnecessary, but see *McManus v. Insurance Co.*, 96 S. C., 375, 80 S. E., 613; *Powell v. Insurance Co.*, 97 S. C., 375, 81 S. E., 654; *Hightower v. Insurance Co.*, 121 S. C., 378, 113 S. E., 478; *Rogers v. Insurance Co.*, 135 S.

C., 89, 133 S. E., 215, 45 A. L. R., 1172; *Allen v. Insurance Co.,* 139 S. C., 41, 137 S. E., 214.

We have examined the other questions raised by the appeal and find them to be without merit.

The judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE BLEASE and MR. JUSTICE CARTER and Circuit Judge G. B. GREENE concur.

MR. JUSTICE BONHAM (dissenting) : The pleadings and testimony in this case disclose that on February 1, 1913, the defendant issued its policy by which it insured the life of Willie Lawrence Brant in the sum of $1,000.00. The beneficiary named in the policy was Mamie Sue Brant, the wife of the insured. Willie Lawrence Brant borrowed on his policy, from the company, the sum of $377.00. February 1, 1929, there was due on the policy a premium in the sum of $38.42, and interest on the policy loan. These were not paid when due, nor were they paid within the thirty-one days of grace thereafter allowed by the terms of the policy; so that under the terms of the policy it lapsed and became void, except that under the provisions of the policy the insured had the option of electing to convert the policy into term insurance for a certain period, or into automatic paid-up insurance for $132.00. If insured failed to exercise this option within thirty days after the lapse of the policy, paid-up insurance in the sum of $132.00 was all the right he had under the policy. He did not exercise this option in the allotted time, and the policy became one for paid-up insurance in the sum of $132.00. The insured died about two o'clock in the afternoon of June 25, 1929. On the afternoon of June 24, the day before the insured died, his partner in business, W. J. Harter, sent to G. E. Passmore, the cashier of defendant company at Columbia, S. C., a check for $59.76 to pay the amount of the premium and interest the insured "was behind." Mrs. Mamie Sue Brant, the beneficiary named in the policy, has died since the death of the insured; the plaintiff is her only child and the administratrix

of her estate. At the trial defendant offered to allow verdict against it for $132.00, the amount of paid-up insurance due, with interest, and tendered the amount of $59.76, the amount of the check sent to Passmore by Harter. A motion for directed verdict in favor of defendant was denied. The jury found for plaintiff the sum of $623.00, and interest. This appeal followed upon the exceptions stated in the record. These I shall not consider in detail.

In my opinion, the appeal is controlled and decided by the answer to the question, Did the defendant waive compliance with the provision of the policy to the effect that: "Should the contract lapse because of default in any premium, or interest due on any loan, it may be reinstated at any time within three years after the lapse, provided satisfactory evidence of insurability be furnished the company, and all arrears, with interest thereon, be paid."

This Court is committed to, and in sympathy with, the rule that if there be any competent and relevant testimony of waiver by the insurer it makes an issue of fact to be submitted to the jury. It is also clear in its adherence to the rule that if there be no such evidence, if the testimony admits of but the reasonable conclusion that there was no waiver, it is the duty of the Court to say so as a matter of law. In every case, then, as in this, the principal and preliminary question is, Is there such evidence as will carry the case to the jury?

The definition of waiver is this: "The voluntary relinquishment of a known legal right." The knowledge of the legal right is not limited to the knowledge that there exists such right in one's favor; but it must be also a knowledge of the circumstances in which the parties are placed when the waiver is alleged to have occurred. It must be a voluntary act, with knowledge of the conditions calling for action, or the voluntary refraining from action. One cannot relinquish his right voluntarily and knowingly when he does not know that his right is in peril or in question.

"It may be well to remark in this connection, that the question of intent in the matter of waiver is referable not to the secret understanding of a party, but to his intention as indicated by language or conduct." *Farmers', etc., Bank v. Peoples First National Bank, etc.,* 161 S. C., 286, 159 S. E., 617, 620, citing *Davis v. Fenner,* 30 Pa. Super. Ct., 389; 40 Cyc., 263.

"To constitute a waiver within the definition already given it is essential that there is an existing right, benefit or advantage, a knowledge active, or constructive, of its existence, and an intention to waive it." 20 R. C. L., 968.

"No man can be bound by a waiver of his rights unless such waiver is distinctly made, with full knowledge of the rights which he intends to waive, and the fact that he knows his rights, and intends to waive them must plainly appear." 20 R. C. L., 909.

"By waiver is meant the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such a right. Therefore, in order to constitute waiver, the person against whom the waiver is claimed must have full knowledge of his rights *and of facts which will enable him to take effectual action for the enforcement of such right.*" (Italics added.) *State ex rel. Birchmore v. State Board of Canvassers,* 78 S. C., 461, 59 S. E., 145, 148, 14 L. R. A. (N. S.), 850, 13 Ann. Cas., 1133.

"In order that waiver may work an estoppel, it must be an act or acts, which evince an intentional relinquishment of a known legal right. The proof must be clear that the party against whom the doctrine of waiver and estoppel is invoked knew what his rights in the premises were, and purposely, intentionally, relinquished them; surrendered them. If the person continue to demand his rights * * * he cannot be held to have waived his rights. * * * " *Griffith v. Newell,* 69 S. C., 300, 48 S. E., 259; *Empire Buggy Co. v. Moss,* 154 S. C., 431, 151 S. E., 788, 790.

"These grounds were not made at the trial. Nor can we ascribe any potency to the position that defendant is estopped from raising its defense because no part of premium was restored. It is time enough to do this when policy is returned for cancellation. Such is the language of the policy itself." *Norris v. Insurance Co.,* 55 S. C., 455, 33 S. E., 566, 567, 74 Am. St. Rep., 765.

In the light of these declarations of the law of waiver, let us review and analyze the evidence upon which is built the contention that the defendant has waived its right to stand upon the terms and conditions of the policy to the effect that in order that Willie Lawrence Brant might be reinstated he must pay up his arrears of premium and interest *and furnish proof of his insurability;* that is to say, he must furnish proof of being in good health. It is conceded that he did not do this; it is conceded that he could not do it; that he was, when the check was sent, almost *in articulo mortis;* the check was sent from Ulmer the afternoon of June 24. Mr. Brant died about 2 o'clock p. m. of the next day; just when the check was received in Columbia and deposited. It is admitted that Passmore had no knowledge of the physical condition of the insured. The check was sent by the business partner of Brant who concealed from Passmore that Brant was then entering the valley of the shadow of death. Here is what the record discloses occurred when W. J. Harter, who sent the check to Passmore, was being examined by plaintiff's attorney: "Mr. Harter, you say you had a conversation with Mr. Passmore?" "Yes, sir." "What was that conversation?" "I asked him if Mr. Brant was in arrears with his insurance policy, and he said he was behind $59-.76." "The amount contained in that check?" "Yes, sir." "I asked him this; I called him before I sent a check for that amount, and if it would renew his insurance to put it in good standing and he said it would and I said I will mail this check to you this afternoon and I did."

Here is absolutely no evidence that Passmore, even if he had authority to waive proof of insurability, had knowledge of the condition of the insured, and yet intentionally relinquished the right of the company to demand proof of insurability as a condition precedent to reinstatement. If it be asked why Passmore didn't inquire, the answer is that the record shows that he was not an executive officer of the company; he was a cashier, stationed at Columbia to receive renewal premiums. As soon as this check was received he sent it immediately to the home office at Greensboro. Immediately, within two days, the company made demand for the medical certificate of insurability. They did not know that the insured had died before they had received the check. June 28, two days after the death of the insured, the company wrote Passmore to get the health certificate. It did not know of the death till it heard from its agents at Orangeburg, on July 2d. The company has never received any proof of the insurability of Brant, at the time his business associate sent the firm's check to Columbia, or since, for the very good reason that it could not be given. When Passmore received the check he deposited it to the credit of the company, as he did all premiums which came to him as cashier, and the same day, June 25, mailed the duplicate slip to the company at Greensboro. June 28 he received from the company a letter instructing him to get application in full for reinstatement. (This includes health certificate.) July 1 he wrote W. L. Brant (then dead). It is clear that here is no evidence of waiver; no evidence of intention to waive. But it is urged that the company retained the check which Harter had sent it. To whom would the check have been returned? If to the firm of Brant & Harter, how would that have affected the issue as evidence of intention not to waive? The check had been deposited in a Columbia bank for collection before the company had knowledge of the death of Brant. It never converted the check to its use. In two days of its receipt the company, in ignorance of the death of the insured, tried to get the health certificate. The day after it learned of the

death of the insured it wrote the plaintiff: "The policy therefore is in force at this time under paid up insurance in the sum of $132.00. We are today sending the blanks upon which to furnish us with the proofs of the insured's death to our Columbia, S. C., office, which office will give the claim immediate attention." Surely here is clear and uncontradicted proof of the intention of defendant not to waive the health certificate. T. Bultman, the assistant manager of the claims department of the Insurance Company, testified: "I found that there had been tendered $59.76, which was being held pending application for reinstatement and evidence of insurability satisfactory to the Company." July 2 the company sent for proofs of death." July 25 it wrote to Mrs. Harvey: "Please refer to our letter of July 3 and send us proofs of the death of the above insured, sent you in that letter."

August 7, the company wrote Mrs. Harvey: "Please refer to our letters and send us physician's certificate in connection with this policy." Instead of sending the certificate, which they could not send, plaintiff immediately thereafter, in August, began this action. Where is the proof of the intentional relinquishment of the right to have proof of the insurability of Mr. Brant?

The general rule is that the return of the premium is not essential to the avoidance of a policy, *nor is its retention a waiver* (italics added), especially where the insured was guilty of fraud in obtaining the policy, or where knowledge of the ground of avoidance is first obtained after a loss.

"The plaintiff relies upon waiver and estoppel, or rather evidence thereof, upon the two grounds: (1) That the company retained the premium note after it had declared a lapse of the policy under the condition of nonpayment in the policy and in the note. * * * Both the policy and the note provide that the nonpayment of the premium note at maturity shall avoid the policy. The note is not disputed; the nonpayment of it at maturity is conceded. Under these

circumstances, clearly the burden is upon the beneficiary of the policy to sustain its replication to the company's contention of lapse of the policy by establishing a waiver by the company. This replication cannot be established by an inference drawn from the simple fact of retention of the note after maturity, for the retention is compatible, as his Honor, the Circuit Judge, held, with a purpose to use the note as evidence of nonpayment, a breach of the condition of the policy and the note, resulting in a lapse of the policy." *Stubbs v. Phila. Life Ins. Co.,* 151 S. C., 332, 333, 149 S. E., 2, 4.

"The issue of waiver must logically be determined by the intention of the insurance company." *Id.,* page 351 of 151 S. C., 149 S. E., 2, 11.

"Waiver, as has been often defined, is the voluntary relinquishment of a known right—that is, that it needs no consideration moving between the parties; it is unilateral and *depends entirely* upon conduct of the company; *what it did and what it said was not only material but vital, for in no other way could its purpose and intention be disclosed."* (Italics added.) *Id.,* page 350 of 151 S. C., 149 S. E., 2, 11.

This case turned upon the admissibility of letters by the officers of the company, which were excluded on circuit.

In our case the letters were admitted and they clearly show, and are uncontradicted, that the *purpose* and *intent* of the insurance company was to insist upon the condition precedent to reinstatement; that there be an application for reinstatement accompanied by proof of insurability.

Let it be borne in mind that this case was begun in a month or two after the death of Brant. The insurer asserts that it has at all times been willing to return the check sent it by Harter. At the trial, tender was waived by plaintiff's attorney. As was hereinbefore said, it was argued that it was the duty of Passmore to advise the insured that it was necessary, in order to reinstate Brant, that his application for reinstatement must be accompanied by a certificate of

health. The answer is that the insured, his wife, and daughter had the policy in their possession, they must have known what was necessary to be done to have the insured reinstated, they were charged with knowing it. They were the parties in interest; the insured was fast approaching his end. Harter testified that Mrs. Brant asked him to send the check. Did not good faith and fair dealing require that they inform Passmore of the hopeless condition of Brant?

In the case of *Gailliard v. Globe & Rutgers Fire Ins. Co.,* 160 S. C., 386, at page 389, 158 S. E., 727, 728, the Court quotes with approval from the case of *Cobb & Seal v. Insurance Co.,* 78 S. C., 388, 58 S. E., 1099, 1100, the following: "The plaintiff's duty was to have the conditions of the contract in mind and observe them, and he cannot shift the duty to the shoulders of the defendant's agent."

It must also be borne in mind in answer to the suggestion that the fact that defendant asked that proofs of the loss be sent was proof of waiver sufficient to send the case to the jury, that the policy was still in force to the extent of the paid-up insurance, $132.00, and it was necessary that defendant have the proofs of loss in order that it might pay the claims for such paid-up insurance.

It is true the law abhors forfeiture, and that the Courts are quick to seize upon proper excuse to avoid the enforcement of a forfeiture. But the law is also quick, and equally jealous to uphold and enforce contracts. Hence it says that when there is no relevant and competent evidence of waiver of the conditions the Court must, as a matter of law, so declare; and the evidence of waiver, or from which waiver is inferred, must be clear and distinct.

"We are not unmindful that waiver is ordinarily a question for the jury, under proper instructions from the Court, but when the facts are undisputed and but one inference can be drawn from them, then it becomes a matter of law. A careful examination of the entire record in this case convinces us that the only inference that can be drawn from the

evidence is that the deposits made with the defendant by the plaintiff in September, 1925, were voluntary. The other elements of waiver being likewise present the trial Judge was right in directing a verdict." *Farmers' & Merchants' Bank v. People's First Nat. Bank of Charleston,* 161 S. C., 286, 159 S. E., 617.

In the case now present there is no dispute of facts. There is no doubt that when Harter sent the check to Passmore, June 24, that Brant, the insured, was *in extremis,* and died the next day; that Passmore had no knowledge of these facts; the very language used by him in his 'phone conversation shows that he had reference only to the amount of arrears on the policy and interest on the loan; that there is absolutely no evidence that Passmore had the intention of waiving the right of the insurance company to require an application for reinstatement with proof of insurability, with knowledge that the insured then lay dying. No other reasonable inference can be deduced from the evidence than that there was no waiver, nor proof from which waiver might be inferred to go to the jury. The motion by defendant for directed verdict should have been granted.

The judgment of the Court below should be reversed, and the case remanded, with instructions to enter judgment for plaintiff for the amount of paid-up insurance conceded by defendant to be due, to wit, $132.00, with interest, at 7 per cent. from the 29th day of July, 1929, and since defendant's counsel in open Court so consented plaintiff should be allowed, if so advised, to enter judgment for $59.76, the amount of the check sent to Passmore by Harter, with interest at 7 per cent., from July 29, 1929