15211

LESTER v. GUARDIAN LIFE INS. CO.

(13 S. E. (2d), 627)

*Messrs. Thomas, Cain & Black* for appellant,

*Messrs. E. J. Best* and *S. Evelyn Lester* for respondent,

February 7, 1941.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BONHAM.

We adopt the "Statement" set out in the record and agreed to by the respondent and the appellant:

"This action was instituted in the County Court for Richland County, South Carolina, by the service of a summons on May 18, 1938, and seeks the recovery of $3,000.00 damages, actual and punitive, for the alleged wrongful and fraudulent cancellation of a policy of insurance in the face amount of $25,000.00 issued by the defendant to the plaintiff.

"The defendant denied the material allegations of the complaint and alleged that the policy in question had become lapsed for nonpayment of the premium and loan interest due May 18, 1932, and the failure of the plaintiff to do the acts

necessary to enable the company to consider the reinstatement thereof. It specifically denied any wrongful or fraudulent conduct on its part.

"The action came on to be heard before the presiding Judge and a jury. At the conclusion of plaintiff's evidence the defendant announced that it would offer no testimony and made motions for nonsuit and direction of verdict, which were refused as to actual damages but granted as to punitive damages.

"The jury returned a verdict in favor of the plaintiff for $2,371.25, actual damages.

"A motion for new trial was made on the grounds stated in the record and refused by a formal order. Within due time notice of appeal was given.

There is a great deal of documentary evidence in the case, consisting principally of letters written to the Insurance Company by the plaintiff and letters written to her by the Company. When these letters, especially some of those written by the plaintiff, were offered in evidence, the plaintiff was allowed by the Court to give her interpretation of them over the objection of the defendant. It was error for the Court to allow this to be done. It confused the issues and must have led the jury to come to the conclusion that what the plaintiff thus said while on the witness stand was evidence in support of her contention. We make this ruling at the opening of this opinion because these letters are for the interpretation of the Court and play an important part in the determination of the Court.

We have given much study to these letters; they are too numerous to be inserted. From our study of them we deduce this plain conclusion: That the plaintiff erred in thinking she had paid the premium due on her policy when she finally paid the sum of $100.73, and that this was all she was required to pay to settle the premium and interest due on the loan on May 18, 1932, and thus to keep the policy in force. It appears from the record that she kept the policy in force until October 18, 1932, by making several extension

payments up to that date, at which time there was due the sum of $100.73. She was notified that this sum must be paid and the application for loan filled out and returned before application for further extension could be granted.

On October 12, the plaintiff was furnished with a loan blank and a memorandum showing that the amount due the Company in settlement of the premium and loan interest due May 18, 1932, was $100.71. She was also furnished with a memorandum showing the amounts of the deposits received at the Company's office for the purpose of extending the time for the payment of the premium due May 18, 1932. On October 14, plaintiff completed and forwarded to the Company the loan application but did not pay the $100.73, but continued to contend that she had paid all that she was due. On November 16, 1932, the Home Office advised the plaintiff that her policy had been lapsed for the nonpayment of the premium due May 18, 1932, which had been extended to October 18, 1932, but that they would be glad to consider a proposition for the reinstatement of the policy through the medium of a new loan; that she would have to pay the $100.73, as shown by the memorandum sent her, and the Company would have to be furnished with satisfactory application for reinstatement and proof of her insurability. The plaintiff refused to furnish an application for reinstatement. She claims that she had paid all amounts due; nevertheless, she sent her check for $100.73 on December 9, 1932. The Company acknowledged receipt of the check and asked plaintiff to send the application for reinstatement of the policy. The plaintiff replied that she did not send in the remittance to reinstate her policy. On January 5, 11, 25, February 8, 17, 28, and March 7, 1933, plaintiff was again asked for these papers but no response was received from her. March 9, 1933, the Home Office in New York called the attention of the plaintiff to this matter and informed her that they were holding the $100.73 remittance pending the receipt of satisfactory application for reinstatement. She was again advised to this effect on March 25, and April 15.

Plaintiff advised the Company on April 20, that she would not furnish application for reinstatement. May 15, 1933, the Company returned to the plaintiff the amount of her deposit, $100.73, in view of the fact that the requirements for reinstatement had not been fulfilled; and on May 18, 1933, advised her that in view of the fact that the premium due May 18, 1932, had not been paid the net cash surrender value of the policy had, in accordance with the provisions of the policy, been applied to the purchase of extended term insurance in the sum of $22,775.00 for a period of one hundred and seventy-five days, and the suggestion was again made that she apply for reinstatement. This suggestion was not accepted, and she returned appellant's check for $100.73. The check was sent to her and returned by her several times, until the Company advised her on January 27, 1934, that the amount would be held for her account and subject to her order.

This is a fair epitome of the facts shown by the exhibits and testimony in the record.

To us it appears plain that the policy lapsed for failure to pay the premium due May 18, 1932, and that so far from having negligently, carelessly, willfully and fraudulently demanded of plaintiff a larger amount than was due, and thus caused the lapse of the policy, the Company acted with commendable interest in its effort to keep the policy alive for plaintiff.

There can be no doubt that in the circumstances, the appellant was within the conditions and terms of the policy when it caused the policy to be lapsed. The respondent may have acted in the honest belief that she had paid the premium due May 18, 1932, and the interest due on her loan, when she refused the requests to send in the application for reinstatement and the proof of insurability, but an analysis of all of the competent and pertinent evidence, including the numerous exhibits, shows conclusively that she was mistaken, and thus led to the loss of her policy.

The citation of but few authorities will show that it is the settled rule in this jurisdiction that the failure to pay the premiums on a policy, as provided by the policy, will cause it to lapse. The able opinion of Mr. Justice Fishburne in the case of *Kittles v. General American Life Ins. Co.*, 182 S. C., 162, 188 S. E., 784, 789, and the authorities there cited, sets this question at rest:

"In the case of *Bergholm v. Peoria Life Insurance Company* of Peoria, Illinois, 284 U. S., 489, 52 S. Ct., 230, 231, 76 L. Ed., 416, the United States Supreme Court said:

" 'Contracts of insurance, like other contracts, must be construed according to the terms which the parties have used, to be taken and understood, in the absence of ambiguity, in their plain, ordinary, and popular sense. *Imperial Fire Ins. Co. v. Coos County*, 151 U. S., 452, 462, 463, 14 S. Ct., 379, 38 L. Ed., 231. As long ago pointed out by this Court, the condition in a policy of life insurance that the policy shall cease if the stipulated premium shall not be paid on or before the day fixed is of the very essence and substance of the contract, against which even a Court of equity cannot grant relief. *Klein v. Insurance Co.*, 104 U. S., 88, 91, 26 L. Ed., 662; *New York Life Ins. Co. v. Statham. et al.*, 93 U. S., 24, 30, 31, 23 L. Ed., 789; *Pilot Life Ins. Co. v. Owen* [4 Cir.] 31 F. (2d), 862, 866. And to discharge the insured from the legal consequences of a failure to comply with an explicitly stipulated requirement of the policy, constituting a condition precedent to the granting of such relief by the insurer, would be to vary the plain terms of a contract in utter disregard of long-settled principles.'

"The doctrine thus announced has been consistently followed and applied by this Court, and the failure to pay premiums when due, in the absence of waiver, results in forfeiture. See *Donald v. Piedmont & A. Life Ins. Co.*, 4 S. C., 321; *Perkins v. Philadelphia Life Ins. Co.*, 93 S. C., 88, 76 S. E., 29; *Parry v. Southeastern Life Ins. Co.*, 95 S. C., 1, 78 S. E., 441; *Wood v. Southeastern Life Ins. Co.*, 107 S.

C., 536, 93 S. E., 197; *Cantey v. Philadelphia Life Ins. Co.,* 166 S. C., 181, 164 S. E., 609."

That the provisions relating to reinstatement are valid ones; that the Company had the right to require the plaintiff to submit proof of her insurability, is fully established in this State.

In the case of *Thomason v. Commonwealth Life Ins. Co.,* 168 S. C., 435, 167 S. E., 684, 685, Mr. Justice Stabler, afterwards Chief Justice, said for the Court: "An examination of the quoted provision of the policy discloses that it contains conditions in regard to the exercise of the right to reinstatement; and, as pointed out in *Harvey v. Insurance Company,* 165 S. C., 427, 164 S. E., 6, under such provision, the company has the legal right to require the insured, as a prerequisite to reinstatement of a lapsed policy, to furnish 'evidence of insurability satisfactory to the company,' and to pay 'past due premiums with five per cent interest thereon' and 'any other indebtedness of the insured to the company' that it might require, or, upon his failure to comply with all or any of these conditions, to deny reinstatement. * * *"

It is true that this opinion holds that these provisions of the policy may be waived, but no question of waiver is made in our present case.

The trial Court should have granted defendant's motion for directed verdict.

The judgment of the Court below is reversed and the case is remanded to that Court with direction to enter judgment for the defendant.

MESSRS. JUSTICES CARTER, BAKER and FISHBURNE and MR. ACTING ASSOCIATE JUSTICE G. B. GREENE concur.