**Joseph M. Rummler and Dixie K. Rummler, Appellees, v. Metropolitan Life Insurance Company, Appellant.**

**Gen. No. 42,147.**

Heard in the second division of this court for the first district at the February term, 1942. Opinion filed November 17, 1942.

HOYNE, O'CONNOR, RUBINKAM & MELANIPHY, of Chicago, for appellant; NATHANIEL RUBINKAM and JOHN C. MELANIPHY, both of Chicago, of counsel.

BELL, BOYD & MARSHALL, of Chicago, for appellees; VICTOR M. HARDING, JR., of Chicago, of counsel.

MR. JUSTICE FRIEND delivered the opinion of the court.

Joseph M. Rummler, as the insured, and Dixie K. Rummler, as beneficiary under a policy of insurance issued by Metropolitan Life Insurance Company upon the life of Joseph M. Rummler in the sum of $3,000, which had lapsed for nonpayment of a premium due March 16, 1940, filed a complaint in equity for the purpose of enjoining the company from canceling the policy and for a decree continuing the policy in full force and effect upon the payment of premiums by plaintiffs, on the twofold theory (1) that one of the company's agents had assured the policyholder that late payment would be excused, and (2) that the receipt and retention of the late payment by the company and the subsequent mailing to the policyholder of notice to pay his next premium, with the warning that unless it was paid the policy would be forfeited, constitute a waiver of the right to forfeit. The cause was referred to a master, who found the issues in favor of defendant and recommended dismissal of the complaint for want of equity. The chancellor, however, sustained plaintiffs' exceptions to the report and entered a decree in their favor, from which defendant appeals.

From the essential facts it appears that Joseph M. Rummler (hereinafter referred to as plaintiff) was covered by a group policy while employed as salesman by *Popular Science Monthly*. After leaving its employment April 30, 1938, he exercised his right to convert the contract into an ordinary life policy, which was issued by defendant without physical examination June 16, 1938, for $3,000. Plaintiff was then in his early thirties, had graduated from Cornell University in 1930, possessed considerable business experience, had read the policy and retained it in his possession from the day it was issued. The policy provided for quarter annual premiums of $18.36, payable on the 16th day of September, December, March and June of each year, with a grace period of 31 days after each date. Plaintiff paid the first premium of $18.36 on or about June 16, 1938 and all quarter annual premiums to and including December, 1939. The premium due April 16, 1940 (adding the period of grace) was not paid on or prior to that date, and it is conceded that the company had the right to forfeit the policy. Several days after his default plaintiff received by mail an application for reinstatement. He proceeded to the loop office of the company in Chicago and asked for Richard Kinsella, his "regular agent." Kinsella was not in at the time and plaintiff was referred to John H. Kritikson, who advised him to fill out the application and mail it to the company with his check for $18.36. Plaintiff testified that Kritikson assured him the policy would be reinstated without medical examination, but this statement was denied by Kritikson, who defined his position as that of salesman, employed to solicit and sell insurance, without authority to pass upon applications for reinstatement. Kritikson also said that the Chicago office had nothing to do with the approval or disapproval of such applications, but that such matters had to be submitted to the home office. May 11, 1940, plaintiff mailed his

application and check to the Chicago office. The application was prepared and signed by plaintiff, contained a notation that the policy had lapsed for nonpayment of premium due March 16, 1940, and provided:

"Application is hereby made for the reinstatement of the above stated policy which lapsed for nonpayment of premium due as stated above. I hereby certify that the foregoing statements and answers are correct and wholly true and have been made by me to induce the Metropolitan Life Insurance Company to reinstate the above policy, and I agree that if said Company shall grant such reinstatement the same shall be deemed to be based exclusively upon the representations contained in this request and upon the express condition that if the foregoing statements be in any respect untrue said Company shall, for a period of two years from the date of such reinstatement, be under no liability by reason of the attempted reinstatement of the policy, except that the Company shall return to the insured or his personal representative all premiums paid since the date of said reinstatement.

"It is understood and agreed that any sum deposited with the Company on account of this application for reinstatement, will be held for my account without obligation on the part of the Company until it has officially acted on this application, and that (a) *if* this application is approved, then any such sum will be applied to the payment of overdue premium and interest, but (b) *if* the Company declines to reinstate said policy, the said sum will be returned."

Upon receipt of the application and check the company mailed plaintiff the following provisional receipt:

"Pending the ascertainment of facts or the accomplishment of acts upon which the Company's acceptance of such payment depends, and the delivery of an

official receipt to replace this provisional receipt, the said sum is held subject to the order of the payer, without obligation or waiver of any rights on the part of the Company, and it will be returned if it is not accepted, or upon the request of the payer at any time before such acceptance.''

Shortly after May 11, 1940 plaintiff had a telephone call from Kinsella, who advised him that a medical examination would be required and directed him to call on Dr. Benjamin Levinson, the company's physician, who subsequently examined him on May 28. The examination disclosed a murmur over the mitral area of the heart, commonly designated as ''a leaky valve.'' Following the submission of the physician's report to the company, Kinsella called on plaintiff in the forepart of June 1940, and told him of the heart condition found by Dr. Levinson. Plaintiff was evidently aware thereof, because he said he ''expected something like that, that there was a heart condition, and that he was very, very foolish to let the policy lapse.'' Kinsella thereupon suggested that the company would reinstate the policy on a special class rating requiring the payment of premiums at $28.32 instead of $18.36 per quarter, or in the alternative plaintiff could get approximately $1,500 insurance at the original premium rate. Plaintiff entertained some doubt as to whether he could afford to pay the increased premium and Kinsella therefore offered the suggestion that he pay the premium he had been paying and reduce the amount of insurance. According to Kinsella, plaintiff said ''it was a good idea, he would think it over.'' But neither Kinsella nor the company heard from him thereafter. The complaint was filed early in August, while defendant was still awaiting Rummler's reply. Under the circumstances defendant had no occasion to return the check inclosed with plaintiff's application for reinstatement before suit was filed, but the money

was tendered in defendant's answer and again upon trial before the master.

Although there is some conflict in the testimony as to whether Kritikson told plaintiff that the policy would be reinstated upon filing of the application for that purpose and payment of the premium, there is nothing in the record to justify the conclusion that Rummler relied on any such assurance. The application which he prepared and signed showed on its face that the policy had lapsed for nonpayment of premium due March 16, 1940. Plaintiff had read the policy, as he said, which contained the following provision:

"REINSTATEMENT—If this Policy shall lapse in consequence of default in payment of any premium, it may be reinstated at any time, . . . upon the production of evidence of insurability satisfactory to the Company and the payment of all overdue premiums with interest at six per centum per annum to the date of reinstatement."

Moreover, there is nothing in the evidence to suggest that when Kinsella reported the heart condition disclosed by Dr. Levinson, plaintiff then considered the policy reinstated or in full force and effect; otherwise there is no reasonable explanation for his submitting to a medical examination as a prerequisite for reinstatement of the policy. It is unlikely that Rummler believed Kritikson to have had authority to reinstate the policy because 17 days after he talked to Kritikson he appeared before Dr. Levinson, and prior thereto he had made a declaration in writing that his policy was lapsed and that he was applying for its reinstatement. He at no time claimed that the policy had actually been reinstated. The master who heard the evidence makes no factual finding as to the conversation between plaintiff and Kritikson, but he concluded that defendant was not bound by any statements made by its agents or representatives in connection with the

application for reinstatement, and his conclusion is fortified by a provision of the policy which could not have escaped plaintiff's attention if he read it, as he said he did, that "No agent is authorized to waive forfeitures, to alter or amend this Policy, to accept premiums in arrears or to extend the due date of any premium."

After the master had filed his report and an order was entered by the chancellor allowing plaintiffs' objections to stand as exceptions thereto, the Rummlers amended their complaint by adding count 2 in which they alleged that May 26, 1940, the company mailed plaintiff a written notice of premium due June 16, 1940. The notice read: "METROPOLITAN LIFE INSURANCE COMPANY hereby gives notice that the premium on the policy described below will be due in the amount and at the time stated, *if said policy·be then in force.*" (Italics ours.) Having received this notice shortly after May 26, as plaintiffs alleged in their amended complaint, Rummler on May 28 submitted to the physical examination by Dr. Levinson, and about June 28 sent defendant his check for $18.36, which sum was returned to him by the company. Obviously he could not have considered that the policy was in force and effect when he mailed his check because he undoubtedly knew that it had lapsed for nonpayment of premium due March 16, 1940, and that its reinstatement depended on whether the examination disclosed him to be an insurable risk. Nevertheless he relies on this notice as the second circumstance constituting a waiver of the right to forfeit.

The policy under consideration, like most life insurance policies, stipulates: (1) for the payment of premiums; (2) for their payment on a certain day; and (3) for the forfeiture of the policy in default of punctual payment. The courts in this and other States have consistently held that time is material and of the essence of the contract and nonpayment at

the day involves absolute forfeiture if such be the terms of the contract. *New York Life Ins. Co. v. Statham*, 93 U. S. 24. In *Lester v. Guardian Life Ins. Co.* (S. C.), 13 S. E. (2d) 627, the court, quoting from *Bergholm v. Peoria Life Ins. Co.*, 284 U. S. 489, pointed out that "the condition in a policy of life insurance that the policy shall cease if the stipulated premium shall not be paid on or before the day fixed is of the very essence and substance of the contract, against which even a court of equity cannot grant relief." In *Broughton v. Equitable Life Assur. Society of United States*, 71 F. (2d) 821, the insured executed an application for reinstatement of a lapsed policy, after his agent had cashed his check for the past due premium. He received a provisional receipt therefor and died before the application was acted upon. The court held that until evidence of insurability was furnished and accepted, the policy was not reinstated, saying: "The receipt given him for the check he had tendered in payment clearly indicated that the money was received tentatively to be held in trust until he should comply with the provisions of the policy. There was nothing in the previous course of business between the parties nor in the receipt or application for reinstatement that could lead a reasonable man to believe that the provision of the policy requiring that the evidence of insurability should be satisfactory to the company would be waived."

Counsel seem to agree that the chancellor in the case at bar was of opinion that the mailing of the notice relating to the June 16, 1940 premium brought the case within the ruling of this court in *Stevenson v. Prudential Ins. Co. of America*, 308 Ill. App. 401. In that case suit was brought upon a life insurance policy for $10,000 issued on the life of one Joseph Husband. Trial by the court without a jury resulted in a judgment for plaintiff of some $7,500. There was a loan on the policy of $3,001.87 and the cash surrender value

was $3,015, so that on June 16, 1938, when the quarter premium was due the net cash surrender value was $13.13. This would purchase extended insurance for 43 days from that date. No part of the June premium was paid. Thereafter, August 30, 1938, the company notified the beneficiary of the policy that the quarterly premium was due September 16, 1938, and that " 'unless the premium then due shall be paid  .  .  . by or before' 31 days thereafter, (October 17, 1938) 'said policy and all payments thereon will become forfeited and void.' " Insured died September 21, 1938. The circumstances of that case can readily be distinguished from the case at bar. It was here shown, without contradiction, that the statutory notice of forfeiture was given plaintiff more than 15 days prior to March 16, 1940, whereas proof of a similar condition precedent was not present in the *Stevenson* case. Moreover, in this proceeding the notice relating to June 16, 1940 specifically contained the words "if said policy be then in force," whereas no such fact appeared in the notice in the *Stevenson* case. The gravamen of the conclusion reached in the *Stevenson* case is that insured was misled to his disadvantage, since insured and beneficiary did not know that the policy had lapsed for nonpayment of premium, having had some value for extended insurance. Nor was there any application for a reinstatement involved in that decision. In the case at bar there is nothing to indicate that Rummler was misled. He was fully aware of the lapse of the policy, he made application for reinstatement, submitted to a physical examination and obviously could not have considered that the policy was in force and effect when he received the notice relating to the June 16 premium.

The evidence in this case establishes without contradiction that Rummler allowed his policy to lapse, made an application for reinstatement, submitted to a medical examination in connection with his application

and was advised that the company would not reinstate the policy on the same terms on account of his heart condition. Under these circumstances and in the view that we have heretofore expressed, there could be no waiver in law or in fact of the forfeiture due to plaintiff's failure to pay the premium when it fell due. Therefore we are of opinion that the decree of the circuit court should be reversed and the cause is remanded with directions to overrule plaintiffs' exceptions to the master's report and enter a decree dismissing the complaint for want of equity in accordance with the conclusions and recommendations of the master.

*Decree reversed and cause remanded with directions.*

SULLIVAN, P. J., and SCANLAN, J., concur.