Charles Ruppman Advertising, Inc. (Formerly Thomson Advertising, Inc.), a Delaware Corporation, Plaintiff-Appellee, v. The Manhattan Life Insurance Company, a New York Corporation, Defendant-Appellant.

Gen. No. 68–27.

Third Judicial District.

December 16, 1968.

Mayer, Friedlich, Spiess, Tierney, Brown & Platt, of Chicago, and Kavanagh, Scully, Sudow, White & Frederick, of Peoria, for appellant.

Clendenin & Burkhard, of Monmouth, and Edwin V. Champion, of Peoria, for appellee.

SCHEINEMAN, J.

The plaintiff, as successor to Thomson Advertising, Inc. brought suit on a life insurance policy issued by the defendant on the life of a Robert Thomson, late president of the plaintiff, formerly named Thomson Advertising, Inc.

The Manhattan Life Ins. Company defended on the ground that the initial premium was not paid during the life of the insured, as the policy required. The trial court found for the plaintiff and entered judgment against the defendant for $25,000, from which this appeal is taken.

The judgment was based on the court's finding that the Sam J. Stone Insurance Agency, which procured the policy for the plaintiff, had waived payment of the initial premium, and represented and agreed that the payment could be made later, and that the plaintiff relied thereon and refrained from making the payment promptly which it otherwise would have done. It is here contended for the defense that these findings are not supported by the evidence and this requires examination of it.

The policy was of the type called "key-man insurance" and was one of a number of similar policies the plaintiff obtained on the life of its president, some from other companies and some from this same defendant.

It contained a provision that it would not be effective unless the first premium is paid during the lifetime of the insured. This is usually a provision in life insurance policies since a company would not want to insure a life that did not exist, or give anyone reason to try to obtain insurance on a dead man. The policy also contained a statement that none of its conditions could be waived except in writing signed by one of several designated officers of the company.

Notwithstanding these provisions, the plaintiff asserts that the payment was waived orally in a conversation on Saturday, April 20, 1963, between Errett Zendt, one of plaintiff's directors, and Thelma Pierson, office manager of the Stone Insurance Agency. It is undisputed that Mr.

282

Thomson died that afternoon, and the premium had not been paid. In fact, plaintiff mailed a check for the first premium about 9:00 p. m. that night, received in the Stone office on Monday, April 22, 1963.

Mr. Zendt was an insurance broker with years of experience. Therefore, he was put in charge of the insurance program of the plaintiff.

He also had a contract with the defendant, the Manhattan Life Insurance Company, to solicit applications for insurance in Peoria and vicinity, and was authorized to deliver policies sent to him by the company "when the terms and conditions governing such delivery had been complied with." This contract, in evidence as defendant's Exhibit 1, contained this reservation: "No policy shall be delivered save during the applicant's good health and after the first premium shall have been duly settled for."

Thus Mr. Zendt had three positions: as an insurance broker, as a solicitor for the defendant, and as a director of plaintiff. The testimony is undisputed that in this particular case he was acting as broker. He testified that in all his dealings with the policy sued on he acted as broker, and the Stone Agency so considered him. He stated that when he procured insurance at the request of plaintiff, he charged them a brokerage commission. There was no evidence that the insured, Mr. Thomson, had ever seen this policy.

The judgment herein contained a finding that the policy had been unconditionally delivered to Mr. Zendt as the broker and duly authorized agent for plaintiff. This is correct but it conveys a false impression in that it would seem to indicate it was delivered unconditionally to the defendant whereas in fact, it was delivered to Mr. Zendt as the broker procuring a policy for his client. As such, he was entitled to look over the policy and see that it did accomplish for his client what he intended them to obtain. But he could not deliver it to the defendant

to put it into effect until the first premium was paid during the lifetime of the insured.

As to the matter of waiver and extension of time, Mr. Zendt had read the policy carefully and thought there were some errors in the premium rates. He telephoned Miss Pierson about 9:00 a. m. that Saturday and told her his observations. He also told her he was trying to contact the fiscal officers of his company but had not been able to do so at that time.

Miss Pierson called him back within the hour and confirmed that the first premium stated by the policy as $2427 was correct. She also testified she told him "if he had his appointment or if he could get in touch with either Mr. Mathias or Mr. Thomson and pick up a check for $2427, the initial premium, and deliver it to me, bring it to me, that the policy would be in full force and effect."

■ We perceive nothing in this statement nor in anything else in the testimony of Miss Pierson indicating that the provisions of the policy were waived, or that the policy would be in effect even though the first premium had not been paid. Of course, she was a defense witness, therefore we expected the appellee to point out some contradictory testimony to justify the trial court's disbelief of Miss Pierson. Nothing whatever of that kind has been called to our attention. On the contrary, Mr. Zendt, the only other party to the conversation, testified in substance to the same effect. He said Miss Pierson told him "if you mail in the first premium or get it to us, the policy will be effective as soon as the premium is received."

There was no possibility of anyone else testifying to this conversation other than by hearsay; thus we are at a loss to find any support for the claim of an oral waiver.

■ Although the plaintiff had other policies issued by defendant, there was no testimony of any previous acts of the defendant, by way of waiver or deferment of any policy conditions, which might have misled plaintiff's officials. Hence, there was nothing in the previous

284

course of business between the parties that would cause a reasonable man to believe the conditions of the policy could be waived by the local agency.

Much of the plaintiff's testimony had to do with alleged errors in the policy, and there was some talk of having to send it back to the home office for correction. We see no significance in this. Surely, if the broker for the plaintiff was not satisfied with the policy and wanted some changes made, this would not cause it to become effective at once without compliance with its stated conditions. No effort was made to assert that the initial premium of $2427 was incorrect. It developed that this would be the annual premium for six years. Thereafter there would be reduced premiums. The plaintiff cites Electric Life Ins. Co. v. Fahrenkrug, 68 Ill 463 (1873) and John Hancock Mut. Life Ins. Co. v. Schlink, 175 Ill 284, 51 NE 795 (1898) as approving the doctrine that the conditions in the policy may be waived orally by a local agent having "apparent authority." These holdings may have been motivated by the belief that very few of millions of insureds ever bothered to read their policies, and probably even fewer beneficiaries.

██ At any rate, it is a general rule as to insurance policies that: "the insured is bound by all the limitations of authority of an insurance agent of which he has notice." 29A Am Jur, p 211; 29 Am Jur, "Insurance," §§ 146 and 147, N 13; 45 CJS, "Insurance," § 609, N 35. Zendt knew from experience that life insurance policies customarily contain limitations like the one in this case. He had actually read this policy and knew of the limitations of the agent's authority therein. He cannot claim that he was misled by anything Miss Pierson told him nor that he relied upon oral statements to overcome the written provisions of which he had notice.

The cases cited in the above notes are from various states but the same rule has been followed in Illinois.

Rummler v. Metropolitan Life Ins. Co., 316 Ill App 362, 45 NE2d 86. For the reasons given the judgment in this case is reversed.

Reversed.

STOUDER, J., concurs.

ALLOY, P. J., dissents.

ALLOY, P. J., dissenting:

I cannot concur in the majority opinion in this cause. I feel that this is a case which is essentially one of a determination by the trial court of disputed factual issues. The first question is whether there was sufficient evidence to support the finding by the trial court that there was either an express or implied waiver by Manhattan of the condition of its policy requiring prepayment of its initial premium. It is true, as appellee contends, if the trial court was correct in finding such waiver either express or implied, that plaintiff is entitled to recover on such theory alone. It also follows that if the finding of an express or implied waiver was not based on sufficient evidence then plaintiff would be entitled to recover if there is evidence in the record to support the finding of the trial court that plaintiff relied upon the representation of the defendant insurance company and delayed in making immediate payment of the premium (which plaintiff otherwise would have done) to the prejudice of the plaintiff. If this were so, then plaintiff would be entitled to recover (A–1 Cleaners & Dyers v. American Mut. Liability Ins. Co. of Boston, 307 Ill App 64, 30 NE2d 87, at 88).

This case is unique only in the fact that the insured died suddenly and unexpectedly during the period of delay in the mailing of the premium. It is clear that if the check for the premium had been mailed prior to the

death of the insured Thomson, plaintiff would have been entitled to recover. Were there particular developments shown in the record which should operate to deprive plaintiff of its right to recover simply because the premium payment was delayed? It is notable that the trial court found that there was an unconditional delivery of the policy without the requirement of payment of the premium and there was evidence to support the court's conclusion on this issue. The express stipulation of the policy, to the effect that the policy would not be in force until the first premium was paid, could be waived by an unconditional delivery of the policy upon an implied understanding that extra time is allowed for such payment (John Hancock Mut. Life Ins. Co. v. Schlink, 175 Ill 284, at 292, 51 NE 795). The record discloses that the policy was delivered manually to plaintiff without a request for payment. There was evidence that it would be "in full force and effect" even though it was to be returned to the home office for correction of clerical errors. The finding of the trial judge that the time for payment had been extended until the next working day was justified on the basis of evidence in the record. There was evidence of the authority of the representative of the agency to deliver the policy and to pick it up for correction. There was also evidence that the representative of the plaintiff company requested information as to the amount for the initial premium. There was evidence that the representative offered to pay the premium from his personal funds. The representative of the selling insurance agency stated that plaintiff's representative could get a check for the initial premium to her and she would send it with the policy to the home office of Manhattan. Such payment would be received if mailed on Monday, April 22, 1963. Payment was in fact transmitted (even though after the death of the insured) within such period of time. So far as the record is concerned the court, even though the evidence was conflicting, could have con-

287

cluded that time of payment was extended until April 22, 1963.

On the record, the trial court could properly conclude that the delay in payment was initiated by the errors of the defendant insurance company in the preparation of the policy which led the local agent to extend the time for payment. The complicated rate structure in the policy was also a contributing circumstance. It is also apparent that the trial court's finding that the agreement to send the policy in for correction and waiver of prompt payment until the following working day was supported by evidence in the record and justified plaintiff's reliance upon the insurance company representation made through its local agent (Hooker v. Farmers Mut. Reins. Co., 304 Ill App 230, 26 NE2d 146, at 149). It is notable that plaintiff was not asking for a modification of the policy which had been delivered to it. The conclusion of the trial court, therefore, that the defense which was based on the ordinary printed provision in the policy (as to the policy being in force upon payment of the premium) was in fact waived by the company agents or, at the very least, plaintiff was entitled to rely on the representation that the payment of the premium could be delayed until the next working day.

The trial judge saw and heard the witnesses and his determination of the disputed factual issues relating to waiver or the representation that the payment of premium could be delayed was not contrary to the manifest weight of the evidence. The trial judge's findings and conclusions should be affirmed in this Court even though we might come to contrary conclusions had we been sitting as a trial court.

It is, therefore, my conclusion that the judgment of the trial court should be affirmed.